MANSON and another, Appellants, vs. THE PHŒNIX INSURANCE COMPANY, Garnishee, etc., Respondent.

*September 5 — September 22, 1885.*

*Chattel mortgage: Insurance money: Garnishment.*

A mortgagee of chattels which are insured by a policy providing that the loss shall be payable to him as his interest may appear, is entitled to the insurance money to the amount of the mortgage debt, as against creditors of the mortgagor garnishing the insurance company after a loss, although the mortgage was not properly filed.

APPEAL from the Circuit Court for *Shawano* County. Garnishment. The garnishee defendant, *The Phœnix Insurance Company of Hartford, Conn.,* answered denying all indebtedness or liability to the principal defendant, Waller. The plaintiffs took issue upon this answer, and upon the trial the court found in favor of the garnishee and rendered judgment dismissing the garnishee proceedings. The plaintiffs appealed. The facts are stated in the opinion.

Manson and another vs. The Phœnix Ins. Co., Garnishee, etc.

For the appellants there were briefs by *Phillips & Forward*, and oral argument by *Mr. Phillips*. They contended, *inter alia*, that the mortgages were void as to the plaintiffs, and as to them the mortgagee had no insurable interest. As to them, therefore, the insurance company was indebted to the defendant Waller. As to them the insurance moneys stand in lieu of the property, and they can reach it as such. R. S. secs. 2313, 2314; *Donaldson v. Johnson*, 2 Pin. 482; *Single v. Phelps*, 20 Wis. 399; *Shepardson v. Cary*, 29 id. 34; *Wallen v. Rossman*, 45 Mich. 333; Jones, Chat. Mortg. sec. 251; *North Star B. & S. Co. v. Ladd*, 32 Minn. 381; *Bernheim v. Beer*, 56 Miss. 149.

For the respondent there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*.

Cole, C. J. The court below held that at the time of the service of the garnishee summons the garnishee defendant was not indebted to defendant Waller, and did not have any property or money in its possession belonging to him, therefore dismissed the proceeding. The correctness of this ruling is questioned by plaintiff's counsel. The facts upon which the questions of law arise are few and undisputed. It seems that the insurance company issued its policy to Waller, insuring a frame building owned and occupied by him as a saloon, and certain personal property therein. The frame building rested upon blocks and was upon land leased by Waller, who had the privilege of removing it at the expiration of his lease. The building seems to have been treated as a chattel, as it doubtless was. By an indorsement on the policy made when it was issued, the loss was made payable to one Stacy, mortgagee, as his interest might appear. Stacy held chattel mortgages on the building and certain personal property therein. The chattel mortgages were given to secure notes of even date, which were executed for money loaned. This indebtedness,

beyond all question, was *bona fide*. The mortgages were not filed with the clerk of the city where the mortgagor resided, but with the town clerk of the town of Richmond. This is the only objection to the mortgages. The property was destroyed by fire, and the loss was adjusted before the garnishee proceedings were commenced. At the time of the loss Waller was indebted to Stacy on the notes and mortgages in an amount exceeding the amount of the policy; and Waller gave to Stacy an order on the insurance company for all the moneys payable on the policy, and this order the adjuster of the company agreed to pay. This likewise was before the garnishee proceedings were instituted.

Now the counsel for the garnishee insists and claims that when the loss occurred Stacy became entitled to the insurance money under the clause in the policy making it payable to him, it appearing that the mortgage debt exceeded the amount of the policy. He says, under the decisions in *Appleton Iron Co. v. British Am. Assur. Co.* 46 Wis. 24, and *Hammel v. Queen Ins. Co.* 50 Wis. 240, the legal title of the policy vested upon its execution in the mortgagee as effectually as if it had been subsequently assigned to him. His mortgage debt being greater than the amount of insurance, his interest was the whole interest of the policy. This is certainly the language of those cases. That the mortgagee had an insurable interest in the property does not admit of doubt. " The mortgagor has an insurable interest in the property to the full value of the goods insured; and the mortgagee has an insurable interest measured by the amount for which he holds the mortgage as security. Each, acting independently, may insure his own interest; but the more usual course is for the mortgagor to obtain a policy of insurance payable to the mortgagee in case of loss." Jones, Chat. Mortg. sec. 100; Wood on Ins. sec. 257. The legal title to the personal property passed to the mortgagee,

by virtue of the mortgage, even before the debt was due. This statement of the law has so often been announced by this court that it requires no reference to the cases which support it.   The legal title of the property insured and of the policy being in Stacy, he has an unimpeachable right to the insurance money.   In no sense can this money be said, under the circumstances, to belong to the principal debtor, Waller, so as to be liable to garnishment by his creditors; for by its policy the garnishee agreed to pay this money, in case of loss, to Stacy, as his interest might appear, and this was a perfectly valid contract.   Consequently, upon the facts, it is clear that the garnishee, when served with process, had nothing in its possession which could be reached by Waller's creditors.

But the counsel for the plaintiffs contend that inasmuch as the chattel mortgages were not duly filed, the right of Stacy to the insurance money was lost, and the creditors of Waller could reach it by garnishment.   We do not think this position sound.   Though the mortgages were not filed in the proper office, still they were perfectly good as between the parties.   The only effect of the failure to duly file the mortgages was to render them invalid as against purchasers or mortgagees in good faith, or creditors who had obtained liens upon the insured property by attachment or levy upon execution.   It is said Stacy's right to the insurance money depends upon the stipulation in the policy and his mortgages. This is true.   But, the mortgages being good as between the parties, Stacy had an insurable interest in the property, measured by the amount of his *bona fide* indebtedness.   He has the right to the insurance money, even as against the plaintiff.   We find that this precise point is decided in *Coykendall v. Ladd*, 32 Minn. 529.   The head-note clearly states the case as follows: "A creditor proceeded to garnish insurance money claimed to be due his debtor upon the loss by fire of a stock of goods covered by a policy of insurance,

in which the loss, if any, was made payable to a third party, who appeared as claimant in the proceedings, as 'his interest' should appear. He claimed an interest in the goods by virtue of a chattel mortgage thereon executed by the debtor. Held that, as against the creditor, plaintiff in the garnishment proceedings, such mortgage, if valid on its face and given in good faith, was sufficient to uphold the right of the claimant to the insurance money, to the amount actually due thereon, though the mortgage was never filed for record." In the opinion the learned judge comments on the previous case of *North Star B. & S. Co. v. Ladd*, p. 381, in the same volume, which was cited and relied on by plaintiff's counsel. It will be seen how the cases are distinguished or reconciled by the court. The decision in the *Coykendall Case* seems to us sound in principle, and we adopt it as a correct statement of the law upon the question we have been considering.

Our decision is placed upon different ground from that on which the court below decided it. The learned circuit court held that the order upon the insurance company given to Stacy by Waller after the property was destroyed amounted to an equitable assignment of the fund due upon the policy. Whether Stacy could hold the moneys, if his right to them rested on this order alone, is a question we need not decide. It is quite plain that his right to these moneys, under the policy and the mortgages, was not weakened by this order. But as his claim was good and valid without it, we need not consider what his rights would have been if they depended upon the order alone.

*By the Court.*—The judgment of the circuit court is affirmed.