For Plaintiff:   Pettine & DePasquale.

For Defendant: Green, Hinckley & Allen.

---

### 189

In re
Lewis Eugene Robinson
and } Eq.No.4385
Edward Leroy Robinson
for Appointment
of Receiver

June 21, 1918

BARROWS, J.   Heard on petition of receiver of Robinson Brothers that he be allowed to pay in full their note secured by a mortgage to David E. Makepeace. The property alleged to have been mortgaged has been sold without prejudice to the rights of the mortgagee. His len, if any, attaches to the proceeds of such sale.

The facts proved are that Robinson Brothers in 1901 gave Makepeace a mortgage note for $1400 to cover a portion of a book balance or cash advanced. The note was secured by a mortgage of all the property in the mortgagor's plant at Wrentham, Mass. The mortgage was drawn by a lawyer and duly recorded. It contained the following clause: "Meaning and intending hereby to sell and convey the personal property of every sort, kind and nature in any wise connected with or used in or about our Jewelry plant and business located in said Wrentham, Village of Plainville, in the Lincoln, Bacon & Company factory building so called.

It is hereby expressly stipulated and agreed that this mortgage shall cover all additions made to said stock, tools and machinery, whether for the purpose of increasing those sold or worn out, or for the purpose of increasing the stock, tools and machinery of said plant and business."

Makepeace had for 30 years been a heavy financial backer of Robinson Brothers. During most of the time he was a creditor for at least $5000. Makepeace's claim against Robinson Brothers was kept in the form of an open book account both before and after the giving of said mortgage, and no entry in connection with the mortgage or note was made in said account. No payment ever has been made on account of said note, nor has interest thereon been paid or demanded.

The mortgage was not treated a san active obligation apart from the book account. What the mortgage was intended to cover, Robinson said he would not pretend to testify. The substance of this evidence on this point was that he long had owed Makepeace a large amount of money; that he executed this note and mortgage and that he had hoped to pay it at some time. Pursuant to the the covenant of the mortgage, the Robinsons kept the property insured for the benefit of Makepeace, the mortgagee, as his interest might appear.

In 1911 a fire occurred which destroyed practically the entire plant at Wrentham. Without attempting to continue the business there, Robinson Brothers started a plant in Providence of the same general nature. Some of the machinery destroyed by the fire they sold as junk and some was traded in. "Very little" of the machinery from Wrentham was brought to Providence. In the adjust-

ment of the insurance loss, Robinson Brothers received $11,700 after Makepeace had signed a waiver of any claim which he might have against the insurance company. Mr. Robinson says: "The money I got from the insurance company belonged to Makepeace and I used it to fit up with in Providence."

On March 22, 1915, at what appears to have been Robinson's suggestion, the mortgage above referred to was recorded in Providence. At this time Robinson owed Lindoll at least $1000. (Note of July 23, 1914, which is still unpaid).

On April 30, 1918, the Robinsons, being in financial trouble, went to Makepeace for advice. Receivership proceedings were decided upon. The same day Makepeace took possession of the shop and contents, and on May 2nd, 1918, a receiver was appointed on the request of the Robinsons.

On these facts two objections to the full payment of the Makepeace note are made by Lindoll, who was a credit of Robinson Brothers to an amount exceeding $4000 at the time the receiver was appointed. (a) That the mortgage was not an equitable lien on the property in Providence, which was sold by the receiver. (b) That Makepeace waived his security by permitting the fire insurance money to be paid to Robinson; that Makepeace's action was in effect a settlement of his mortgage debt and the extension of a new credit without security; that the willingness of Robinson that the mortgage should create a lien upon the new property could not validate the extinguished mortgage or create a valid legal basis upon which to raise an equitable lien good against the creditors of the Robinsons.

### 191

A mortgagee's right to follow mortgaged property and to have an equitable lien upon new property placed upon the premises in substitution for or in addition to the mortgaged property is beyond question. In the language of the present mortgage, however, it is apparent that a certain particular plant and business were referred to and we seriously question whether we would be justified in holding that the Providence plant, although a business of the same nature, was either in addition to or a substitution for the Wrentham plant.

The case of Cooper vs. Rouse, 130 N. Car. 202, cited by counsel, depended upon the particular language of the mortgage giving the mortgagee a claim upon any property purchased within twelve months, which is clearly distinguishable from the language in the present mortgage.

In the view we have taken of the case, we are not called upon to pass upon the above question, because we believe the mortgagee waived his security by permitting the insurance money to be paid to the mortgagor in 1911.

A mortgagee for whom insurance is taken by a mortgagor pursuant to a covenant in the lease has an equitable lien on the insurance money for the amount of his debt.

Nichols vs. Baxter, 5 R. I. 491.

The insurance money stands in the place of the property as security for the debt. It is "indemnity for the loss of the security."

Smith vs. Union Ins. Co., 25 R. I. at 266.

The authorities uniformly state that the mortgagee of either real or personal estate is entitled to the entire proceeds from the insurance and to apply them to the mortgage debt in the first instance.

Smith vs. Union Ins. Co., 25 R. I. 266.

Jones on Chattel Mortgages, 5th ed., Sec. 100.

Jones on Mortgages, 7th ed., Secs. 400 and 409.

Braves v.s Hampden Fire Ins. Co., 10 Allen 281.

Grange Mills vs. Western Assurance Co., 118 Ill. 396.

Wheeler vs. Ins. Co., 101 U. S. 439.

Manson vs. Phenix, 64 Wis. 26.

The legal title to mortgaged personality rests in the mortgagee.

Howard vs. McPhail, 37 R. I. 21.

## 192

Robinson therefore spoke with absolute accuracy when he said that the money received from the insurance company for destruction of the property belonged to Makepeace.

It is also to be observed that the Massachusetts Statutes, Revised Laws, 1908, Chap. 118, Sec. 58, provide that the insurance company, where property is mortgaged, must first pay the mortgagee to the extent of his debt, if the insurance money stood in place of the property, it seems to us that the written order of Makepeace directing the payment of such money to Robinson Brothers operated at least as a waiver of his security.

A waiver is the voluntary and intentional abandonment of a known legal right.

Words & Phrases, Vol. 8, Page 7375.

Clemons, Powers & Co. vs. Metcalf, 171, Ill. 101.

Walker vs. Linden Lumber Co., 170 N. Car. 460.

Rogers vs. Davis, 184 Southwestern, 151. (Cal.)

Gearson vs. German International Bank, 78 Ark. 141.

11 Corpus Juris, Sec. 443, p. 675.

We therefore conclude that when Makepeace, with full knowledge that the insurance money belonged to him, at least to the extent of his debt, waived his right thereto, he lost his lien. It could not be renewed by any verbal arrangement in 1915.

Petition of the receiver to pay in full the claim upon this $1400 note is denied.

For Petitioner: Waterman & Greenlaw.

For Creditors: J. J. Hahn and A. G. Chaffee.