CONNORS and another, Plaintiffs and Appellants, vs. AARON and another, Trustees, imp., Respondents (HOME INSURANCE COMPANY and others, Garnishees).

*January 12—February 9, 1932.*

For the appellants there were briefs by *J. M. Fitzgibbons* of Monroe, attorney, and *Richmond, Jackman, Wilkie & Toebaas* of Madison of counsel, and oral argument by *Mr. Oscar T. Toebaas* and *Mr. Fitzgibbons*.

For the respondents there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, and oral argument by *Otto A. Oestreich*.

WICKHEM, J. On February 6, 1929, Copeland and Young, who were then owners of the property involved, conveyed it to the defendant Mango by deed, and on the same day assigned to the defendant Mango three insurance policies totaling $16,000. Thereafter the defendant procured further insurance to the extent of $34,000. One policy of the foregoing contained a clause providing that the loss should be payable to the interpleaded defendants as their interest might appear. The rest of the policies were taken in the name of the defendant Mango and contained no such clause. On March 1, 1929, Mango and his wife executed and deliv-

ered negotiable bonds in the amount of $50,000, secured by a trust deed, to the interpleaded defendants as trustees, the trust deed being a lien upon the property previously purchased from Copeland. Plaintiffs installed the plumbing fixtures in the building covered by the trust deed, at a total cost of $2,585.62, which debt was the basis of the garnishment.

On or about December 24, 1929, a fire occurred causing damage to the mortgaged premises. The insurance companies adjusted their share of the fire loss at $1,701.40, and plaintiffs served their garnishment before the money had been paid to the defendant Mango.

Mango testified that after the fire he borrowed $1,500 upon his own credit, and in January, 1930, completely repaired the fire damage, and that this repair was completed prior to the commencement of the garnishment action.

In addition to the real estate therein described, the trust deed pledged all of the right, title, and interest of the mortgagors under a lease between the mortgagors, as lessors, and Montgomery Ward & Company. The trust deed further provided that the rents from the building be deposited in the Kaspar American State Bank, of Chicago, and the trustees be authorized to use the rents to pay taxes, federal income taxes on bonds secured by the trust deed, insurance premiums, interest on bonds, and certain specified payments upon the principal.

It appears that the mortgagor owed the depository bank a large sum of money upon his unsecured note, and that he arranged with the depository that the rents collected should be applied to this unsecured debt and not to the purposes defined in the trust deed. It was from this depository bank that the mortgagor borrowed the money to pay for the restoration of the building.

With respect to the subject of insurance and insurance policies, the trust deed imposes upon the mortgagor an obli-

gation to insure the premises for eighty per cent. of their value. It is further provided that the policies of insurance shall be subject to the approval of the trustees, shall be delivered to DeWolf & Co., Inc., and shall provide for all loss to be made payable to the trustees. It is further provided that in case of loss the trustees may collect the moneys due and settle claims under the policies, and that all moneys due under the policies shall be paid to the trustees. The trust deed thereupon sets out the procedure in case of fire loss. The mortgagor agrees promptly to repair and restore the building and to pay therefor. It is provided that when the cost of repairing and restoring has been established by the sworn statement of an architect or general contractor, the mortgagors shall deposit with the trustees the difference between the cost of such repairing and the net amount of the insurance moneys in the hands of the trustees available for the same. Thereafter, in case the mortgagors proceed with reasonable dispatch to repair the property, all insurance moneys, together with the amount deposited, are to be paid out upon architects' certificates. In case the mortgagors fail to repair, it is provided that the trustees may repair and apply the insurance moneys and deposits of the mortgagors to this end. It is further provided that if the mortgagors have made no deposit in accordance with the agreement, they will deposit upon demand such sum as is necessary to make the repairs. It is further provided that the trustees in such a situation may elect not to repair, and may then apply the insurance fund, first, to the repayment of any moneys which theretofore may have been advanced by the trustees, with interest; second, so far as it will reach, towards the satisfaction of the indebtedness regardless of the maturity dates of the bonds. It is further provided that the same application shall be made by the trustees of *any unexpended insurance moneys remain-*

*ing in the hands of the trustees in case of the repairing, re-
building, restoring, renewing, or replacing of such destroyed
or damaged property, whether the same be done by the.mort-
gagors or the trustees, after the cost thereof shall have been
paid in full.* It is then provided that any balance of the in-
surance moneys remaining in the hands of the trustees after
the satisfaction of the entire indebtedness shall be paid to the
mortgagors.

It is the contention of the plaintiffs that the equitable lien
upon the proceeds of the insurance policies, which the inter-
pleaded defendants are conceded to have had, existed solely
as security for the restoration of the premises to the condi-
tion in which they were prior to the fire. It is the further
contention that the mortgagor, by restoring the premises at
his own expense, completely discharged the obligation which
the equitable lien existed to secure, and that the lien could
not survive the discharge of the principal obligation.

As heretofore stated, it is conceded by both plaintiffs and
interpleaded defendants, and established by the authorities,
that if a mortgagor agrees to take out fire insurance with
loss payable to the mortgagee, and thereafter takes the in-
surance in his own name, without adding the provision as
to payment of loss to the mortgagee, the latter, after a loss
has occurred, will have an equitable lien upon the money due
under such policy. *Juneau County State Bank v. State Bank
of Mauston,* 181 Wis. 430, 195 N. W. 396.

The question therefore resolves itself into this: What
obligation does this equitable lien secure? It is conceded by
the interpleaded defendants that if it appears that the only
interest which the mortgagee has is the right to have the
security made good by restoration, and if the property has
been restored to its original condition, the lien is extin-
guished. If, on the other hand, the right of the interpleaded
defendants is to have the insurance money as security, not

merely for the restoration of the premises but for the debt itself, the mere restoration at his own expense by the mortgagor would not divest the lien.

The answer to this question must be read out of the trust deed itself. Referring again to the trust deed, we find that the mortgagor is compelled by its terms to proceed immediately to the repair of any portion of the property destroyed by fire. He is given no right, as between himself and the trustees, until the debt is wholly paid, to collect or handle or keep or have returned to him any portion of the insurance money. If he proceeds to repair, such portion of the insurance moneys collected by the trustees as are needed therefor are to be applied by the trustees to the restoration of the premises. The balance, if any, is to be kept by the trustees and applied to the indebtedness, the mortgagor being entitled to a return of the insurance money or a portion of it, only in case the entire indebtedness shall have been paid by the mortgagor.

In this case, instead of proceeding to repair the building and, as was his right under the policy, to have the insurance moneys applied to the discharge of this obligation, the mortgagor elected to repair at his own expense. This did not entitle him, as against the trustees, to claim the insurance money. It merely operated as a waiver of his right to have the insurance money applied to pay for the repairs. It is our conclusion that under the terms of the trust deed the proceeds of insurance policies constitute a security not merely for the restoration of the premises, but for the debt itself.

It is claimed by the plaintiffs that the paragraphs in the trust deed relating to the disposition of surplus funds, after repairs, have application only in case the money is paid to the trustees. However, the deed clearly contemplates that the money shall be paid to the trustees. No other disposition of the money is intended to be tolerated.

It is true that the insurance company might elect to repair, and that if they did, the trustees would have no right to complain. But where the insurance company elects to pay the loss, it seems clear to us that the trust deed contemplates that the trustees shall have the right, as against the mortgagor, to receive the insurance money as security for the debt.

The plaintiffs cite *Huey v. Ewell,* 22 Tex. Civ. App. 638, 55 S. W. 606; *In re Moore,* 6 Daly (N. Y.) 541, and *Sheridan v. Peninsular Sav. Bank,* 116 Mich. 545, 74 N. W. 874, to the effect that a restoration of the property by the mortgagor has the effect of destroying the right of the mortgagee to an equitable lien upon the proceeds of a fire insurance policy. The view of the cases cited is doubtless sound where a mortgage merely contains ordinary covenants to repair and to insure. Where, however, as here, the trust deed provides specifically for the payment to the trustees of the proceeds of the policies, and that any surplus over and above that expended for repairs shall be applied upon the debt, and that the mortgagor may claim the proceeds of the insurance or such surplus as remains after restoration only in the event of his complete discharge of the indebtedness, the rule of these cases has no proper application.

This view of the case compels an affirmance of the judgment.

*By the Court*—Judgment affirmed.