**In the Matter of J & L TRANSPORT, INC., Debtor.**

**Bankruptcy No. MM11–84–02182.**

United States Bankruptcy Court, W.D. Wisconsin.

June 17, 1986.

---

Brady C. Williamson, Margaret J. Vergeront, La Follette & Sinykin, Madison, Wis., for debtor.

Jerard J. Jensen, Whyte & Hirschboeck, S.C., Madison, Wis., for First Sav. Leasing Corp.

James Sweet, Murphy & Desmond, S.C., Madison, Wis., for Badger Utility.

ROBERT D. MARTIN, Chief Judge.

J & L Transport, Inc. ("J & L"), a chapter 11 debtor, has moved the court to order First Savings Leasing Corp. ("First Savings"), a secured creditor, to endorse four insurance checks made payable jointly to J & L and either First Savings or its assignee, Lyons Capital Resources, Inc. ("Lyons"). All four checks are the proceeds of insurance policies covering J & L trailers, which were damaged in accidents. The insurance policies named either First Savings or Lyons as loss payee.[1] The accidents occurred between November 25, 1984, and July 9, 1985. First Savings has stated, and J & L has not disputed, that in each case it received no notice of the accidents prior to issuance of the insurance checks. In each instance, without the knowledge or consent of First Savings, J & L had the trucks repaired. J & L either paid for the repairs or obligated itself to make payment.

A hearing on this matter was held on December 10, 1985, and the parties agreed that no material facts were in dispute. The parties have submitted briefs, affidavits, and exhibits in support of their positions.

## I.

In Wisconsin, the respective rights of the owner of collateral and the secured party to insurance proceeds are determined by the terms of the contract between the parties. *See Connors v. Aaron*, 207 Wis. 115, 119, 240 N.W. 821 (1932); *Cary Mfg. Co. v. Acme Brass & Metal Works*, 215 Wis. 585, 589, 254 N.W. 513 (1934).[2] Thus, the parties may agree that the owner of the collateral provide insurance coverage which names the secured party as loss payee. *See Connors, supra*, 207 Wis. at 119, 240 N.W. 821; *Juneau Co. State Bank v. State*

---

1. Apparently Lyons has reassigned its interest to First Savings and is willing to endorse the checks made out jointly to it if First Savings agrees or this court so orders.

2. Although *Connors* and *Cary Mfg.* principally concern insurance on real property the reasoning appears to be fully applicable to cases involving personalty. In *Cary* the mortgagee was

allowed to apply the proceeds of a fire insurance policy to the real estate mortgage debt even though the proceeds may have arisen from personalty not subject to the creditor's mortgage interest. *See also Manson v. The Phoenix Ins. Co.*, 64 Wis. 26, 24 N.W. 407 (1885), which involved insured property under a chattel mortgage.

*Bank of Mauston,* 181 Wis. 430, 195 N.W. 396 (1923). Unless the terms of the security documents require the restoration of the collateral, the secured party is entitled to apply insurance proceeds to the debt. *Cary Mfg., supra,* 215 Wis. at 589–92, 254 N.W. 513. The mere fact that such a result is very disadvantageous to the owner, or that the owner's need to restore the collateral is great, does not justify the reformation of the agreement by a court of equity. *Id.* Thus as a general rule a secured party may apply insurance proceeds to the debt, rather than to restoration of the collateral, in the absence of an agreement to the contrary.

J & L argues that the contract required it to keep the trailers in good repair, and that having done so, it is entitled to the insurance proceeds notwithstanding the loss-payee clause. The mere existence of a loss-payee clause in favor of a secured creditor would not justify diversion of insurance proceeds from repair of the collateral if the security documents required repair or restoration. *See Connors v. Aaron, supra.* However, even if the security documents required the secured party to apply insurance proceeds to repairs, the unilateral repair of the collateral by the owner at his own expense might well constitute a waiver of his right to have the insurance proceeds used to make repairs. *See id.,* 207 Wis. at 120, 240 N.W. 821. In such a case, the secured party would be free to apply the insurance proceeds to the debt. *See id.*

█ The agreement between the parties does not provide that insurance proceeds could, at J & L's option, be applied to the repair of the trailers. The following clauses of the agreement[3] are relevant:

9. Lessee at Lessee's own cost and expense and without authority to incur mechanics' or suppliers' liens shall keep the equipment in good repair, condition and working order and shall furnish all parts, mechanisms, devices and servicing re-

quired therefore and shall not materially alter the equipment without the consent of Lessor.

10. Lessee hereby assumes and shall bear the entire risk of loss for theft, loss, damages, or destruction of the equipment, from any and every cause whatsoever. No such loss or damage shall impair any obligation of Lessee under this Agreement which shall continue in full force and effect. In the event of such loss or damage and irrespective of, but applying full credit for payment from any insurance coverage, Lessee shall at its own cost and expense at the option of Lessor: (a) place the same in good repair, condition and working order, or (b) replace the same with similar equipment of equal value, or (c) pay the total of all unpaid rents and the market value of the equipment prior to such loss, in which case this Agreement shall terminate, except for Lessee's duties under paragraph 17, as of the date such payment is received by Lessor.

. . . .

13. Lessee shall not sell, assign, sublet, pledge, mortgage or otherwise encumber or suffer a lien upon or against any interest in this Agreement or the equipment or remove the equipment from the place of installation set forth herein unless Lessee obtains the written consent of Lessor which consent shall not be unreasonably withheld. Neither this Agreement nor any interest in the equipment is assignable or transferable by operation of law. Lessee agrees not to waive its right to use and possess the equipment in favor of any party other than Lessor and further agrees not to abandon the equipment to any party other than Lessor.

. . . .

15. Lessee shall keep the equipment insured against all risks of loss or damage from every cause whatsoever for not less than the replacement cost new of the

---

**3.** The agreement between the parties is styled as a lease transaction, however this court, on January 13, 1986, held that the equipment lease was actually intended to be a secured sales transaction.

equipment without consideration for depreciation and shall carry public liability insurance, both personal injury and property damage, covering the equipment and Lessee shall be liable for all deductible portions of all required insurance. All said insurance shall be in form and amount and with companies satisfactory to Lessor. All insurance for loss or damage shall provide that losses, if any, shall be payable to Lessor, and all such liability insurance shall be in the joint names of Lessor and Lessee. Lessee shall pay the premiums therefore and deliver to Lessor the policies of insurance or duplicates thereof, or other evidence satisfactory to Lessor of such insurance coverage. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Lessor, that it will give Lessor 10 days written notice prior to the effective date of any alteration or cancellation of such policy. The proceeds of such insurance payable as a result of loss of or damage to the equipment shall be applied, at the option of Lessor, as set out in paragraph 10. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policies. In case of the failure of Lessee to procure or maintain said insurance or to comply with any other provision of this agreement, Lessor shall have the right, but shall not be obligated, to effect such insurance or compliance on behalf of Lessee. In that event, all moneys spent by and expenses of Lessor in effecting such insurance or compliance shall be deemed to be additional rent, and shall be paid by Lessee to Lessor with the next monthly payment of rent.

. . . .

17. Upon expiration of the lease term, Lessee will immediately return the equipment in as good a condition as received, less normal wear, tear and depreciation, to Lessor or to such other reasonable place as is designated by Lessor. The equipment shall be carefully crated, shipped freight prepaid and properly insured. Should Lessee not return the equipment at the end of the lease term, Lessee shall continue to pay rent to Lessor in the sum and on the due dates set out in this agreement as a month to month lease term until returned by Lessee or demand therefore is made by Lessor.

Under clause 10 it is clear that First Savings and not J & L had the option of deciding whether to apply the proceeds to repairs or to the balance of J & L's obligation.

## II.

■ J & L suggests that clause 10 of the agreement conflicts with clause 9. This contention is meritless. Clause 9 requires generally that J & L maintain the trailers. Clauses 9 and 13 require that J & L not allow any liens to attach to the trailers without First Saving's consent. Clauses 10 and 15 require J & L to insure the trailers. Option "c" of clause 10 allows First Savings to apply insurance proceeds to the debt in which case J & L is freed from all obligations under the agreement except those provided in option "c" and in clause 17. Thus if First Savings had exercised option "c," J & L would have been freed from its obligation of maintenance under clause 9.

■ J & L argues that the combined effect of clauses 10 and 17 render option "c" unconscionable because, literally read, option "c" would require J & L to pay the total of all unpaid rents plus the market value of the trailers prior to the loss plus, under clause 17, to restore the trailers to good condition and return them to First Savings. WIS.STAT. § 401.103 makes general principles of law and equity applicable to the Uniform Commercial Code.[4] WIS.

---

4. WIS.STAT. § 401.103 provides:

Unless displaced by the particular provisions of chs. 401 to 409 the principles of law and

STAT. § 402.302 grants the court broad powers to limit the enforcement of contracts governed by Article 2 of the UCC.[5] Although section 402.302 is not directly applicable as such to transactions governed exclusively by Article 9, *see In Re Advance Printing and Litho Company,* 277 F.Supp. 101 (W.D.Pa.1967) *affirmed sub nom Advance Printing & Litho Co. v. Bentz,* 387 F.2d 952 (3rd Cir.1967), it is applicable to the "sales aspects" of leases intended as security. *See generally Associates Discount Corp. v. Palmer,* 47 N.J. 183, 219 A.2d 858, 860–61 (1966) ("bailment lease" found to be all inclusive instrument constituting both contract for sale and secured transaction); *In Re Cawthorn,* 1 B.R. 267 (Bankr.W.D.Va.1979) (VA.CODE § 8.2–302 used to modify secured contract). In any event, section 2–302 of the UCC may be applied by analogy to secured transactions. *See* Barkley Clark, The Law of Secured Transactions ¶ 12.4, n. 42 at 12–20 (1980).

If the agreement in question were between a commercial lender and a consumer borrower, equities of the situation might compel this court to refuse to enforce clause 10. As with many of the other "boilerplate" provisions in the agreement, clauses 10 and 17 are ambiguous, conflicting, and cumulative. There is no question that the clauses almost entirely favor First Savings. J & L, however, is not a consumer purchaser. As a commercial entity it must be presumed to have exercised at least a minimal degree of sophistication in its contractual dealings. The terms of the contract are not so one-sided or unfair as to justify non-enforcement against a commercial party.

Clauses 10 and 17 can be reasonably construed (against First Savings as the drafter) to avoid any unconscionable result. *See* WIS.STAT. § 402.302(1), footnote 5, *supra.* Option "c" of clause 10 leaves J & L's duties under clause 17 intact. On its face clause 17 requires J & L to return the equipment in good condition. Clause 17 can reasonably be interpreted to require no more than that J & L return any undamaged portion of equipment in its possession if the agreement is terminated by First Savings under option "c." Clause 17, as so interpreted, does not require the debtor to replace damaged or destroyed equipment after paying the value of the equipment under option "c."

Similarly, option "c" requires J & L to pay the "unpaid rents and the market value of the equipment prior to ... (the) loss...." Construing the terms in J & L's favor, this ambiguous language can be held to require that J & L pay only the unpaid rentals which accrued prior to the loss (not for the entire "lease" term) plus the market value of the trailers at that time. This would put First Savings in roughly the same position it would have been in had the agreement run full term. Clauses 10 and 17 thus construed are not unconscionable as drafted.[6] *See* WIS.STAT. § 402.302(1), footnote 5, *supra.*

---

equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

5. WIS.STAT. § 402.302 provides:
(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

6. The actual effect of clauses 10 and 17 may be even more limited in view of this court's prior determination that the "lease" is actually a secured sales transaction. Since First Savings is only seeking the insurance proceeds, it is not necessary to decide whether it would be entitled, under clause 10, to any further remedies against J & L after application of the insurance proceeds to the debt. It is only necessary to determine that the clauses, as originally drafted, can be construed in a way that makes them reasonable between commercial parties.

Since I have previously found the trailer lease to be a secured purchase arrangement, the effect of applying the insurance proceeds to the debt will be to reduce the debt. As a matter of law this is not an unjust result even though J & L may be inconvenienced. *See Cary Mfg., supra; Connors v. Aaron, supra.* Rather it would be unjust to deprive First Savings of its contractually bargained for right to apply the proceeds to the debt. *See Cary Mfg. supra,* 215 Wis. at 589, 254 N.W. 513. This result is also equitable since it is clear that J & L did not deal forthrightly with First Savings when it made repairs and allowed liens to be placed on the trailers without prior notification to and consent from First Savings.

Upon the foregoing which constitute my findings of fact and conclusions of law in this matter J & L's motion must be dismissed. It may be so ordered.