## GEORGE H. FERGUS ET AL.
### v.
## SETH WILMARTH.

1. TRUSTEE.—It is the plain duty of a trustee who has in his hands a security for a debt, unless the instrument creating the trust otherwise provides, to hold the security until the debt matures, and then, if such debt is not otherwise discharged, to apply the security to its satisfaction; and his duty is in no way changed by the security becoming converted into money before the debt matures.

2. INSURANCE CLAUSE.—The above principle applied to the ordinary insurance clause in a trust deed.

ERROR to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding. Opinion filed October 22 1885.

The writ of error in this case brings up for review a decree in equity foreclosing a deed of trust.  It appears that on the 26th day of June, 1871, George H. Fergus, the plaintiff in error, borrowed of Alexander H. Rice, $12,000, for which he gave his principal promissory note, payable five years after date, with interest at the rate of eight per cent. per annum, payable semi-annually, and also executed ten coupon interest notes for said several installments of interest; that, to secure said notes, said Fergus and wife executed to William E. Furness, as trustee, a deed of trust, conveying certain real estate in Chicago, Cook county, said deed of trust containing, among other things, the following covenant:

" And the said George H. Fergus, for himself and for his heirs, executors and administrators, does covenant and agree to and with the party of the second part, his successors in trust hereinafter named, his heirs and assigns,  *  *  *  that he will and shall keep all buildings (except outhouses), that may at any time during the continuance hereof be upon, or a part of the said premises, insured against loss or damage by fire, in such insurance company or companies as the said party of the econd part, or his successor in trust, his heirs or assigns, may direct, for the full insurable value thereof, not to exceed, however, the amount of said indebtedness; and will and shall with the proper consent of the insurers, assign the policy or policies to the said party of the second part, his successor in trust hereinafter named, his heirs or assigns, upon request therefor, as a further security for the indebtedness aforesaid.'

At the time of the execution of the deed of trust, there was situated on said premises a four story and basement brick building, and some time thereafter, and prior to October 9, 1871, said Fergus obtained a policy of insurance on said building for $7,500, payable to said Furness, as trustee, and delivered the same to him.  At the time of the great fire of October 9, 1871, the building was burned, and on the 3d day of August, 1872, said trustee collected and received on said policy the amount of said insurance in full.

The insurance money, when collected, was first deposited by the trustee in the Second National Bank of Chicago, but short-

ly afterward it was drawn by him from that bank and deposited in the Scandinavian National Bank of Chicago, where it remained until December 9, 1882, when that bank became insolvent. There is some conflict in the evidence as to the circumstances under which said fund was deposited in the last named bank. Fergus and the trustee agree in their testimony that the trustee, being a stranger to the officers of that bank, was taken there by Fergus and introduced to the cashier, and that such introduction was made with a view on the part of both to the deposit of the money there. The trustee, however, testifies that such deposit was made at the suggestion and request of Fergus, he stating as a reason that the Scandinavian National Bank would pay him interest on the money if he would deposit it there, while Fergus, on the other hand, denies that he either requested or suggested that the fund be deposited in that bank.

Shortly after the collection of the insurance money, and a considerable time before the failure of the Scandinavian Bank, Fergus having commenced, or being about to commence, the restoration of the building destroyed, applied to the trustee for said insurance money, to be used in reconstructing the building, and claimed that he had a right to control and use it for that purpose. On the other hand, Wilmarth, who then held the notes secured by the deed of trust by assignment from Rice, claimed that the money should be applied on the notes. Under these circumstances, as none of the notes had matured, the trustee conceived it to be his duty, and so stated to Fergus, to hold the money in place of the insurance, as a security for the loan, and when the notes should mature, to apply it to their payment; or if, on the other hand, there should be no default in the payment of the notes, and after the restoration of the building, Fergus should obtain a policy of insurance thereon for the same amount as before, to pay the money over to him.

After the insolvency of the bank, the deposit, with interest, was proved up, and allowed by the trustee as a claim before the receiver, and a receiver's certificate was issued therefor. Subsequently two dividends, one of twenty-five per cent. and one of fifteen per cent. amounting in the aggregate to $3,057.53,

were paid by the receiver, all of which the trustee paid over to Fergus. At the hearing, the receiver's certificate indorsed by the trustee " without recourse" was tendered by the trustee to Fergus, who accepted and received the same.

It was urged by Fergus in defense, that the complainant should be charged with the moneys lost by the failure of the Scandinavian Bank; but the court disallowed said claim, and rendered a decree for the full amount appearing to be due on the notes secured by the deed of trust.

Mr. R. B. BACON, for plaintiff in error; as to the liability of the mortgagee, cited Barker v. Garvey, 83 Ill. 184; Story on Agency, § 255.

The mortgagee had no right, without the mortgagor's consent, to convert the insurance, until he had a right to demand payment of the debt: Gordon v. Ware Savings Bank, 115 Mass. 588; Jones on Mortgages, 2d Ed. § 410.

Mr. E. A. OTIS and Mr. GEORGE W. SMITH, for defendants in error.

BAILEY, P. J. In our opinion, there was no error in the refusal of the court below to charge the complainant with the insurance money lost by the failure of the Scandinavian National Bank. The rights of the parties in respect to said money, and the duties of the trustee in relation thereto, all depended upon the terms of the covenant in the deed of trust providing for the insurance, and the established principles of equity applicable thereto. By that covenant, Fergus bound himself to keep the buildings covered by the deed of trust insured for their full insurable value, and to assign the policy to the trustee, to be held by him " *as a further security for the indebtedness*" for which the deed of trust was given. After the destruction of the building by fire, and the collection of the insurance money, the money took the place of the policy, and it thereby became, in the same sense and to the same extent as the policy itself, a security for said indebtedness.

It is the plain duty of a trustee who has in his hands a security for a debt, unless the instrument creating the trust otherwise provides, to hold the security until the debt matures, and then, if such debt is not otherwise discharged, to apply the security to its satisfaction. The fact that it has become converted into money before the debt matures, in no way changes his duty. In such case it would be a clear violation of his trust to hand the money over to the debtor, and the creditor is under no obligation to receive it, nor has the trustee a right to pay it over to him without the consent of the debtor, until the debt matures. 1 Jones on Mort. 410; Gordon v. Ware Savings Bank, 115 Mass. 588.

Shortly after the collection of the insurance money, Wilmarth, the holder of the notes, sought to have it paid over to him, to be applied upon the notes, although not yet due. To this, Fergus, the debtor, objected, and demanded on his part that it be placed under his control to be used in restoring the building. While Fergus clearly had no right to have the money paid over to him, he had an undoubted right to object to its payment to Wilmarth, until the notes matured, and his doing so made it the duty of the trustee to hold the money until their maturity. While the trustee was thus holding the money, and before he had a right to pay it to either party, the bank became insolvent and the money was lost.

Even if it should be held that the money was lost through the negligence of the trustee, it does not necessarily follow that Wilmarth is to be charged with the loss. The trustee was the agent of Fergus as well as of Wilmarth, and we see nothing in their relations which should charge Wilmarth instead of Fergus with the consequences of his negligence. Beyond a mere request that the money be paid over to him, to be applied on the notes, Wilmarth does not appear to have controlled or attempted to control the trustee in selecting a place of deposit, nor does he seem to have been aware of its deposit in the Scandinavian National Bank.

But without deciding that question, it is sufficient to say that the evidence warranted the court below in finding that the trustee was free from the imputation of negligence, and

Fergus v. Wilmarth.

that if there was any negligence, it was that of Fergus rather than of the trustee. So far as appears, the Scandinavian National Bank, at the time the deposit was made, and from that time up to the date of its failure, was in good credit, and, so far as the trustee knew, or had the means of knowing, perfectly solvent and trustworthy. Its insolvency, so far as this record shows, was wholly unexpected to the public, and was a casualty against which ordinary prudence and foresight could not have guarded.

But the evidence shows that, at the time the deposit was made, Fergus was acquainted with the bank and its officers, while the trustee was a stranger to both, and that the trustee was introduced to the bank by Fergus. There was also evidence which tended to show, and which warranted the court in finding, that the Scandinavian National Bank was selected as the custodian of the money at the suggestion and express request of Fergus, his reason for making the selection of that bank being that it would pay interest on the deposit, thus showing that it was his expectation and desire, not only that the money should be deposited there, but that it should remain there until needed by the trustee in the execution of his trust. If, then, there was any negligence in the matter, the court was justified in holding that it was the negligence of Fergus, and in placing the loss upon his shoulders instead of Wilmarth's, who lived in the distant city of Boston, and could have had no personal connection with the negligence which resulted in the loss.

The decree, in our opinion, is fully sustained by the evidence, and it will therefore be affirmed.

Decree affirmed.