DAVID AULD v. J. E. McALLASTER. .

1. TAXES — *Undivided Half of Certain Lands.* The owner of three quar-
ter-sections of land that have been assessed and taxed as entire and
complete quarter-sections cannot pay taxes on an undivided half of
each of such quarter-sections.

2. TAX SALE, *Without Authority.* The county treasurer has no author-
ity to sell an undivided interest in real estate for delinquent taxes
and charges. (*Corbin v. Inslee,* 24 Kas. 154, followed.)

3. EJECTMENT, *Defeated — Recovery of Taxes Paid — Lien.* A tax-title
holder who seeks to recover the possession of an undivided half of
three quarter-sections of land by an action of ejectment against the
original owner, and is defeated in such action, is entitled to be paid
by the successful claimant the amount of the taxes, together with
the proper charges, interest and costs paid by him to procure his
invalid tax deeds. And such taxes, interest, costs and charges are
a lien upon the land until they are paid by the owner or some per-
son liable therefor.

*Error from Jefferson District Court.*

EJECTMENT. The opinion states the case.

*Mills & Wells,* for plaintiff in error.

*W. F. Gilluly,* for defendant in error.

Opinion by SIMPSON, C.: Action of ejectment by McAl-
laster against Auld, to recover possession of the undivided
half of three quarter-sections of land situate in Jefferson
county. McAllaster claims by virtue of three tax deeds, exe-
cuted August 30, 1883, and filed for record February 1, 1887,
for taxes of 1878. The action was commenced on the 25th
day of August, 1887. At the trial at the October term, 1887,
McAllaster offered his deeds in evidence to prove title; they
were objected to, and the objection sustained. The record
does not disclose the nature of the objection, or the cause of
the rejection of the deeds as evidence of title. McAllaster
then offered his tax deeds in evidence to show the amount of
taxes he had paid. The deeds were admitted for this purpose,
and to this ruling an exception was saved by Auld. It was

then admitted by the parties, that the three quarter-sections of land in controversy were subject to taxation for the year 1878, and were assessed and entered upon the tax-roll of the year 1878 separately, and as entire quarter-sections, and that the undivided half of each of said quarter-sections was entered on the sale record of 1879 as delinquent for one-half the taxes assessed against said lands for 1878 as entire or full quarter-sections. No other evidence was introduced by McAllaster. Auld then introduced the following tax receipt:

"1332.        TREASURER'S OFFICE, JEFFERSON COUNTY, KANSAS, }
                         OSKALOOSA, Dec. 20, 1878.        }
    Received of D. Auld the sum of thirty-one and 27-100 dollars, being full of taxes on the following-described property for A. D. 1878.

| Description. | | | | No. acres. | Total val. | Total tax. |
|---|---|---|---|---|---|---|
| | Sec. | Town. | Range. | | | |
| Und. of S.W. ¼ | 28, | 7, | 18................ | 80 | $400 | $10.21 |
| N.E. ¼ | 33, | 7, | 18................ | 80 | 480 | 10.53 |
| N.W. ¼ | 33, | 7, | 18................ | 80 | 480 | 10.53 |
| | | | | | | $31.27 |

                (Signed)        A. McLOUTH, *County Treasurer.*
                                By I. SOUTHWARD, *Deputy.*"

No other evidence was offered by either party. The trial court found the facts as follows:

"1. The land described in plaintiff's petition, to wit, the southwest quarter of section 28 and the northeast quarter and the northwest quarter of section 33, all in township 7, range 18, in Jefferson county, state of Kansas, was subject to taxation and assessed for taxes for the year 1878, and placed upon the tax-rolls of said county of Jefferson as separate and full quarter-sections.

"2. On the 20th day of December, 1878, the defendant, David Auld, paid to the county treasurer the sum of $31.27, and received a receipt therefor as and for the taxes of the undivided half of each of the three quarter-sections above named.

"3. Thereafter, the undivided one-half of each of said quarter-sections were by the county treasurer carried on the tax-sale record of the year 1879 as being delinquent on the undivided one-half of each of said quarter-sections for the year 1878; and on the 2d day of September, 1879, the county treasurer of Jefferson county offered for sale the undivided one-

half interest in each of the three quarter-sections aforesaid, each being offered separately, and such one-half interest was on said date by said county treasurer sold to J. E. McAllaster, the plaintiff in this suit, and certificates of sale for the undivided one-half interest of each of said three quarters issued to said purchaser. The taxes were paid at the date of sale, and were subsequently indorsed on the certificate as follows, with amounts and dates of payment:

"'CERTIFICATE No. 2165: Undivided ½ of S.W. ¼, sec. 28, town 7, range 18, paid September 2, 1879, $12.33. Indorsed on certificate, January 16, 1880, $15.80.

"'CERTIFICATE No. 2167: Undivided ½ of N.E.¼, sec. 33, town 7, range 18, paid September 2, 1879, $12.77. Indorsed on certificate, January 16, 1880, $18.96.

"'CERTIFICATE No. 2168: Undivided ½ of N.W.¼, sec. 33, township 7, range 18, paid September 2, 1879, $12.77. Indorsed on certificate, January 16, 1880, $18.96.'

"4. Thereafter, and on the 30th day of August, 1883, the county clerk issued and delivered to the plaintiff three tax deeds, one deed for the undivided half of each of the above-described quarter-sections. Each of the deeds recites the same facts, and are alike in all particulars, except the description of undivided half-interest in different tracts and the amount of taxes. Each of said deeds was filed for record in the office of the register of deeds in and for Jefferson county, on the 1st day of February, 1887, and recorded respectively, in vol. 4 of tax deeds, at pages 360, 363, and 365. The cost of the three tax deeds and recording same is $——."

The trial court found the following conclusions of law:

"1. The plaintiff has no title to the land described in his petition, and is not entitled to the possession thereof.

"2. The sales made by the county treasurer and the tax deeds issued in pursuance thereof, are void.

"3. The plaintiff is entitled to judgment for the taxes paid by him, with interest from dates of payment to date of deeds, at the rate of 24 per cent. per annum, and 20 per cent. after date of deeds to the date of this judgment, with costs of deeds and recording the same."

The following judgment was entered:

"It is therefore considered, ordered and adjudged by the court here, upon the conclusions of fact and conclusions of law, that the plaintiff have and recover the sum of $334.66, being the whole amount of taxes, interest and costs by said plaintiff paid and to him accrued to this date; and the amount

of taxes, charges and costs paid on each quarter-section afore-
said be and the same is hereby declared and adjudged a lien
on each of said quarter-sections, to wit: $103.10 on the south-
west quarter of section 28, and $115.20 on the northeast quar-
ter of section 33, and $115.36 on the northwest quarter of
section 33, all in township 7, range 18 east, in the county of
Jefferson, state of Kansas; and that unless said amount is paid
in to the clerk of this court in thirty days from the date hereof,
that an execution and order of sale issue, directed to the sheriff
of said county, to appraise, advertise and sell each of said quar-
ters respectively, to pay said respective judgment.    It is also
ordered and adjudged that the plaintiff pay all the costs made
in this case to this date, to be taxed by the clerk, and that the
defendant pay all costs hereafter made to collect or enforce
said lien."

Auld brings the case here, and his counsel urge as errors
for reversal, first, that the receipt is not sufficient to sustain
the finding of the court: "That on the 20th day of Decem-
ber, 1878, the defendant, David Auld, paid to the county
treasurer the sum of $31.27, and received a receipt therefor
as and for the taxes on the undivided half of each of the three
quarter-sections." Counsel argue this question as if nothing
else appeared to show the amount of land paid upon than the
abbreviation "und.," while the receipt itself shows that only
eighty acres of each quarter-section was paid upon, and all the
subsequent entries in the sale-book, the sale and the deeds
show that only one-half of each quarter-section was embraced
in the receipt.

As a second cause for reversal they argue that in cases
where there has been no legal sale of land for delinquent taxes,
the only remedy of a purchaser at such a sale, or pretended
sale, is to cause the county commissioners to have refunded to
the purchaser the money he has thus expended; that it is only
in cases in which it is proper that a sale is to be had, that a
purchaser can have any remedy against the land or the owner
thereof.    *Corbin v. Young*, 24 Kas. 201, is cited, and it is said
that the following language of the court in that case is very
significant: "If his deed be adjudged invalid, as in this case,
on account of a defect in the sale, then, under section one hun-

dred and fifty-six, he may recover his money with interest from the county." This language occurs in connection with a statement made by the judge writing the opinion, of the remedies the tax-title holder in this particular case would have to recover the taxes and interest if he had brought a legal action instead of filing a petition to quiet title, and cannot possibly bear the construction that counsel attempt to give it. In the same volume, the 24th, the case of *Fairbanks v. Williams*, page 16, will be found a construction of the various provisions of the tax law on this question. This view has been uniformly held by this court since that decision. The law is now substantially what it was then, and is, that in all cases in which the holder of a tax deed is defeated in an action by him to recover possession of the land, the successful claimant shall be adjudged to pay the holder of the tax deed the amount of taxes he has paid, with costs and interest. This is done when for any reason the holder of the tax deed is defeated. The taxes are a lien from the first day of November of the year they are levied, until they are paid by the owner of the property or other person liable to pay the same. In this view it does not make any difference on the question we are considering, whether the county treasurer had authority to sell, or that he omitted some essential requirement of sale, such as notice, as either would be sufficient to defeat the tax-title holder in his action, and give him the benefit of the statute. But if the law was as claimed by counsel for the plaintiff in error, this land was subject to sale in 1879 for the unpaid taxes of 1878. The attempt of Auld to pay on an undivided half of the three quarter-sections was a nullity, as the county treasurer has no legal authority to receive a payment on an undivided part of the land, and no authority to sell an undivided interest for non-payment of taxes. (*Corbin v. Inslee*, 24 Kas. 154.)

The third cause for reversal is, that the judgment of the court below makes the taxes, interest and costs paid by the tax-holder a lien on all, the whole land, that unsold as well as that sold. Counsel reverse their position now, and claim there was a sale; while the correct view is, that the sale being

invalid, the lien that attached to the land on the first day of November, 1878, for the taxes assessed and levied thereon, still exists upon the whole land, and will until the taxes are paid by the owner of the land, or other person liable to pay the same; and it is this lien that the court can enforce in favor of the holder of the invalid tax deed, if the owner does not pay.

There is no error in the findings or judgment, and we recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.