## MORRIS SILVER & another *vs.* UNITED STATES TRUST COMPANY.

Suffolk.    May 16, 1932. — September 15, 1932.

Present: RUGG, C.J., CROSBY, WAIT, FIELD, & DONAHUE, JJ.

*Mortgage,* Of real estate: mortgagee's interest in fire insurance. *Insurance,* Fire. *Contract,* Implied, Novation. *Frauds, Statute of. Assignment. Fraud.*

A mortgage of real estate, which was covered by a policy of fire insurance payable to the mortgagee, was in default as to principal, interest and taxes. After damage by fire to the property, the owner thereof made with a contractor a contract for repair of the damage, which contained an assignment to the contractor of the owner's interest in money due from the insurance company up to the amount of the contract price. After beginning work, the contractor consulted the mortgagee and stated to him that he wanted some guaranty for his work and that he understood the insurance money "would first come into the bank, so where would . . . [he] come in"; whereupon the mortgagee replied: "You get paid every cent of it. You don't have to be worrying at all. You go ahead and do the job and when the job will be finished, come in and . . . [I] will pay you the money." The contractor thereupon finished the work. Subsequently the mortgagee foreclosed the mortgage by sale and became owner of the property, and no surplus existed after the application to the mortgage debt of the proceeds of the foreclosure sale and of the insurance money, which was received by the mortgagee. The contractor recovered judgment against the owner, but was unable to collect the judgment. In an action by the contractor against the mortgagee to recover the amount of the contract price, the defendant pleaded the statute of frauds. *Held,* that

(1) The assignment by the owner to the plaintiff conveyed to him only such balance of the insurance money as might remain for him after amounts due upon the mortgage had been paid; and, there being no such balance, the plaintiff took nothing by the assignment;

(2) There was nothing to show that the defendant agreed to defer to the claim of the plaintiff any claim which the defendant might have to the insurance money;

(3) The statement of the defendant to the plaintiff must be taken to mean merely that the defendant would respect the assignment, and would pay over to the plaintiff anything properly becoming due to him;

(4) Even if the defendant's statement amounted to a promise to pay the owner's debt to the plaintiff, such promise was unenforceable by reason of the statute of frauds;

(5) No fraud on the part of the defendant appeared, nor did it appear that the plaintiff entered into his contract with the owner or completed the work in reliance upon any representation made by the defendant;

(6) The plaintiff could not recover on the ground that the defendant had had and received money to the plaintiff's use;

(7) The owner's contract with the plaintiff was not made the contract of the defendant by way of novation;

(8) No relation of *quasi* contract had arisen between the plaintiff and the defendant;

(9) The plaintiff could not recover.

BILL IN EQUITY, filed in the Superior Court on February 16, 1931, and subsequently amended into an action of contract.

In the first count of their declaration, the plaintiffs sought to recover $1,338 by reason of the assignment and the conduct of the defendant described in the opinion. In the second count, they sought to recover the same sum as money had and received by the defendant to their use.

The action was tried in the Superior Court before *Broadhurst*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant on each count of the declaration and reported the action for determination by this court.

*M. Jacobs*, for the plaintiffs.

*I. J. Silverman*, (*M. Krook* with him,) for the defendant.

WAIT, J. The plaintiffs, carpenters and builders, repaired some of the damage done by fire to property then owned by one Levinton on which the defendant held a mortgage. The work was done under contract with Levinton which contained an assignment to them of his interest in money then "due or to become due to him from the respective fire insurance companies who are insuring the fire loss on said building." The contract also set out: "The said owner does hereby authorize and empower and request the insurance companies covering the loss on said building to make the drafts totaling thirteen hundred thirty-eight ($1,338) dollars payable to the said contractors directly and the balance of the fire loss to be payable to him." After work had been begun the plaintiffs went to

the defendant and talked with the treasurer who examined the contract and told an official to look after them. This official, one Ries, examined the paper and asked what they wanted. They replied they wanted some guaranty for their payment. Ries said they had a guaranty written in the contract and an assignment of the insurance. They answered that they understood the insurance money "would first come into the bank, so where would . . . [they] come in." Ries said, "You get paid every cent of it. You don't have to be worrying at all. You go ahead and do the job and when the job will be finished, come in and we will pay you the money." The plaintiffs thought "it is all right as long as the bank says so," went on and finished their work. Then they called at the trust company and asked for their money. Ries said first he should have to see the job. A few days later Ries reported some flooring not done. Levinton had made no complaint; but they put in the flooring and reported to Ries who said he would go look at it again. Ries said the insurance settlement for the fire loss was $2,498 which had been received by the defendant. Later, they learned that the defendant was foreclosing its mortgage, and called on Ries to ask what was to be done about their money. They attended the foreclosure sale; and, later, talked with Ries who said he had sold the house and, by law, was not obliged to pay them anything. Nothing was paid them, nor did they receive any payment on a judgment later obtained against Levinton.

The trust company held a first mortgage for $6,000 and insurance policies, issued to Levinton as owner, payable to it as first mortgagee and to one Freedman as second mortgagee. It received $2,492 from the settlement of fire loss. It became owner on the foreclosure made after the plaintiffs' work was completed. The mortgage was in default at the time of the fire and of the contract; principal, interest and taxes were overdue. No surplus existed after application of the amount of the foreclosure sale and the receipts from insurance to the mortgage debt. The defendant pleaded the statute of frauds. The trial judge

directed a verdict for the defendant and reported the case, on stipulation of the parties that, if the foregoing evidence would warrant a jury in finding for the plaintiffs, judgment should be entered in their favor in an agreed sum; otherwise judgment to enter for the defendant.

In *Palmer Savings Bank* v. *Insurance Co. of North America*, 166 Mass. 189, Field, C.J., declared the law of this Commonwealth to be, where the loss upon a policy of fire insurance was made payable to a mortgagee as his interest may appear, that, if the mortgage is outstanding at the time of the loss and the mortgage debt exceeds the loss, the mortgagee can recover the whole amount payable for the loss in his own name. The mortgagor is entitled only to any balance remaining after the mortgage is paid. Hence the assignment made here by Levinton to the plaintiffs conveyed to them only the balance which might remain for him after any amounts due upon the first and second mortgages had been paid. There was no such balance. They took nothing by the assignment. In this state of the law, there is nothing to justify finding that the defendant bank agreed to defer to the claim of the plaintiffs any claim which it might have to the insurance. The statements of Ries must be taken to mean that the bank would respect the assignment, and would pay over to the plaintiffs anything properly coming to them. If another meaning were given his language it would amount to a promise to pay the debt of Levinton. Such a promise is enforceable only if it or some memorandum of it is in writing. G. L. c. 259, § 1, Second. Admittedly there was no written promise or memorandum. In such an aspect of the case the statute of frauds is a complete defence.

There is here no element of fraud. Money had and received will not lie. The plaintiffs did not enter into their contract with Levinton in reliance upon any representation made by the defendant. They may have continued to perform their contract with him through mistaken belief that, whatever might be due upon the mortgage, they would be paid from the insurance money before any other application would be made of it by the trust company; but they do not testify that but for such belief they would not have gone on, nor that they

gave the company so to understand. It is clear that they did not regard the defendant as undertaking a novation and making the contract its own. Whether or not they authorized the proceeding, they now hold a judgment against Levinton obtained after the foreclosure which they could not legally have obtained had there been a novation.

Had the plaintiffs sought a mechanic's lien for work done under their contract, the prior mortgagees would be preferred to them. G. L. c. 254, § 7. They are in the unfortunate position of any workman who has added value to a mortgaged building under contract with the owner and has not been paid before the mortgage is foreclosed. The mortgagee or purchaser at foreclosure is not bound to pay either the contract price or the value added by the work, although what he obtains may be enhanced in value by that work. Neither has any relation of contract or *quasi* contract with the workman. The buyer, speaking generally, has paid in the price bid the value of the work. He is not enriched unjustly. In the case before us, the defendant has, seemingly, both the building enhanced in value by the work for which the insurance money was intended to be applied under the contract, and the insurance money; but, in fact, through the price paid at the foreclosure the increased value due to the contract work has been made good to the owner, Levinton. The legal situation is the same as if the price had been paid to the owner. The latter has received it in the credit of the price bid upon the mortgage debt.

It follows that the judge was right in his ruling; and, pursuant to the stipulation, since the evidence would not support a verdict for the plaintiffs, the order must be

*Judgment for the defendant.*