Anne Koscher, Appellee, v. Chicago City Bank and Trust Company and Annette Hubert, Appellants. Chicago City Bank and Trust Company and Annette Hubert, Cross Complainants, Appellants, v. Anne Koscher et al., Cross Defendants, Appellees.

Gen. No. 37,751.

Heard in the second division of this court for the first district at the October term, 1934. Opinion filed June 13, 1935.

RATHJE, WESEMANN, HINCKLEY & BARNARD, of Chicago, for appellants; FRANCIS E. HINCKLEY and JOSEPH J. SULLIVAN, JR., of Chicago, of counsel.

SHULMAN, SHULMAN & ABRAMS and HAMLIN K. BUCHMAN, of Chicago, for appellee; MEYER ABRAMS, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

Anne Koscher filed her bill against Annette Hubert and Chicago City Bank and Trust Company praying that said trust company be removed as trustee under a certain trust deed given to secure a mortgage indebtedness, that a successor trustee be appointed and that said trust company be decreed to turn over a certain draft to complainant or to John G. Lobstein, doing business as John G. Lobstein & Company. The trust company and defendant Hubert, defendants to the original bill, filed an amended cross-bill to foreclose the trust deed and for an order commanding Leslie White, John G. Lobstein & Company and Chicago City Bank and Trust Company, as trustee, to affix their proper indorsements to said fire insurance draft thereby making it payable to cross complainant Hubert in partial payment of the indebtedness due under the trust deed. The cause was referred to a master in chancery, who made a report recommending, *inter alia,* that the cross complainants have the proceeds of the insurance draft, the same to be applied in partial payment of the mortgage indebtedness. The chancellor sustained exceptions of complainant to that part of the report, and a decree was entered that ordered, *inter alia,* that the entire proceeds of the draft be paid to the lien complainant, Lobstein, in satisfaction of his lien.

It is conceded that the sole question upon this appeal relates to the distribution of the proceeds of the draft.

On April 24, 1924, Mary May and Patrick May, her husband (now deceased), executed a trust deed conveying certain premises to the Chicago City Bank and Trust Company, as trustee, as security for their indebtedness of $1,500, evidenced by a principal promissory note in that amount, due five years after date with interest thereon at the rate of six per cent per

annum, payable semiannually. On April 24, 1929, the time of payment of the principal note was extended for a period of five years. On August 22, 1931, a fire insurance policy in the amount of $4,000 was issued, insuring the owner against loss or damage by fire and making the loss payable to the owner and the trustee, as their respective interests might appear. On October 14, 1931, a fire loss occurred. Upon adjustment of the loss the insurance company issued its draft payable to all parties who might claim an interest, viz., Chicago City Bank and Trust Company (the trustee under the mortgage and also a defendant and cross complainant in this case), Mary May (the surviving mortgagor and the then record owner of the equity of redemption), John G. Lobstein & Co. (the lien claimant, cross defendant and intervening petitioner in this case), and Leslie White (a cross defendant, who has filed his disclaimer in this suit). The draft was delivered to the Chicago City Bank and Trust Company and was in its possession at the time the instant suit was commenced. After the entry of the decree, at the court's request, the bank indorsed the draft and surrendered it to the master in chancery. The draft was also indorsed by Mary May and by John G. Lobstein & Company, and the proceeds of the same are available for distribution by the master.

After the fire Mary May, the owner of the equity, engaged Lobstein, a building contractor, doing business as John G. Lobstein & Company, to repair the damage to the building caused by the fire, and she agreed, in writing, to pay him therefor the sum of $1,133. The work was done by Lobstein without the knowledge or consent of the trustee under the mortgage or the owner of the same. The master's report, also the decree, found that the reasonable value of the labor and material furnished by Lobstein under his contract was $1,133. After the completion of the work

Mary May, at the instance of Lobstein, delivered, on May 17, 1932, her quitclaim deed to complainant, Anne Koscher, and also assigned to the latter her interest in the draft. It was stipulated that the complainant was holding title to the premises ''as security for the indebtedness alleged to be due John G. Lobstein.'' Prior to the fire, Mary May had defaulted in certain terms of the trust deed by her failure to pay the general real estate taxes for the years 1928, 1929 and 1930 levied against the property, and on October 22, 1932, she failed to pay the semiannual instalment of interest due on the principal note. She filed her bill on October 27, 1932. The amended cross-bill of complaint accelerates the maturity of the principal indebtedness of $1,500 and prays that the proceeds of the insurance draft be applied in partial payment of the trust deed indebtedness and that the real estate be sold for the balance due thereunder. Lobstein, by his answer, in the nature of an intervening petition, seeks to enforce a mechanic's lien against the premises. The decree found that there was due cross complainant Annette Hubert the sum of $1,678.04 with interest thereon at the legal rate from February 28, 1934; also the sum of $350 as reasonable solicitors' fees, and all taxable costs incurred in the proceedings. The total amount due her is over $2,000.

The cross complainants' position is that by ''the trust deed, the owner of the property undertook to and did insure the premises against loss by fire and did make the loss payable to the trustee for the benefit of the owner of the trust deed indebtedness; that the contract of insurance made pursuant to this agreement created an obligation on the insurance company on the happening of the loss to pay the amount of the loss to the owner of the property and the trustee as their interests might appear; that the rights of the bank as trustee to this fund for the benefit of the owner

of the indebtedness were, by reason of the existence of the mortgage and the default, superior to the rights of the owner of the equity, and that John G. Lobstein and Co., or John G. Lobstein, was a total stranger to the transaction; that the institution of this suit by Anne Koscher, the grantee of the owner, is a repudiation of the contract of her grantor in that it seeks the aid of the Court to require the payment of this money to a stranger with whom a contract was subsequently made instead of to the party who had, upon the delivery of the trust deed and the insurance policy and the occurrence of the loss, a vested right to the same.''

Cross defendants contend ''(a) The policy was not payable to the mortgagee alone, but was payable to both the mortgagor and mortgagee as their interest appeared, and when the loss was repaired the mortgagee was not interested in the fund. (b) Even if a default existed the mortgagee was not entitled to any fund derived prior to the declaration of the default.'' ''The trust deed only secured the mortgagee against loss occasioned by fire, and did not provide that the surplus above the loss be paid over to the mortgagee, and after the restoration of the premises to its original condition there was nothing due to the mortgagee and the fund was the absolute property of the mortgagor and he had the right to pay it over to the contractor who restored the loss.''

The trust deed provides: '' . . . *And as additional security for the payment of the indebtedness aforesaid,* the said party of the first part, for said party, and for the heirs . . . covenants and agrees to keep all buildings and fixtures that may be upon the said premises, at any time during the continuance of the said indebtedness, insured against loss or damage by fire, . . . for the full insurable value of such buildings and fixtures, and hereby authorizes said trustee to place all said insurance in such responsible insurance company

or companies as may be approved by the party of the second part, or the holder or holders of said principal note *and to make all sums recoverable upon such policies payable to the party of the second part, for the benefit of the holder or holders of said principal note, by the usual mortgagee or trustee clause to be attached to such policies . . . .*" (Italics ours.)

"But it is settled by many decisions in this country that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed. *Thomas's Adm'rs v. Vankapff's Ex'rs,* 6 Gill & J. (Md.) 372; note to 3 Kent, Com. 376; Angell, Fire and Life Insurance, sec. 62; 2 Am. Lead. Cas. 834, 5th ed.; 1 Herman, Mortgages, sec. 424, and cases there cited. And this equity exists, although the contract provides that in case of the mortgagor's failing to procure and assign such insurance, the mortgagee may procure it at the mortgagor's expense. *Nichols v. Baxter & al.,* 5 R. I. 491." (*Wheeler v. Insurance Co.,* 101 U. S. 439, 442.)

"Where a mortgagor is bound either by covenants in the mortgage or otherwise, for example, by a valid verbal agreement to keep the property insured as a further security for the payment of the mortgage debt, then the mortgagee is entitled to an equitable lien upon the money due on the insurance policy, even though the policy is made payable to the mortgagor; and the proceeds when collected by such mortgagor are held in trust for the benefit of the mortgagee: *Swearingen v. Hartford Ins. Co.,* 52 S. C. 309, 316 (29 S. E. 722); *Nichols v. Baxter,* 5 R. I. 491; *Wheeler v. Insurance Co.,* 101 U. S. 439, 442 (25 L. Ed. 1055); *Cromwell v. Brooklyn Fire Ins. Co.,* 44 N. Y. 42 (4 Am. Rep. 641); *Nordyke v. Gery,* 112 Ind. 535 (13 N. E. 683, 2 Am. St.

Rep. 219); *Chipman v. Carroll,* 43 Kan. 163 (35 Pac. 1109, 25 L. R. A. 305); *Hazard v. Draper,* 7 Allen (89 Mass.), 267." (*Butson v. Misz,* 81 Ore. 607, 612-3.)

"The mortgagor charged himself with the duty to take out insurance for the benefit of the plaintiff, and was not absolved from that duty by his failure so to do nor by taking insurance in his own name. It is agreed by counsel for both parties that in such a case the mortgagee, as between himself and the mortgagor, is entitled to an equitable lien upon the money due on the insurance policy, although it is made in terms payable to the mortgagor. This is the well settled rule. *Lichtstern v. Forehand, ante,* p. 216, 194 N. W. 421; *Butson v. Misz,* 81 Oreg. 607, 160 Pac. 530; 4 Cooley, Ins. 3703, and cases cited." (*Juneau Co. State Bank v. State Bank of Mauston,* 181 Wis. 430, 433.) (See also *Connors v. Aaron,* 207 Wis. 115, 119; *Fergus v. Wilmarth,* 17 Ill. App. 98, 101; *Farmers' Loan & Trust Co. v. Penn Plate Glass Co.,* 186 U. S. 434, 456; *Burrows v. McCalley,* 17 Wash. 269, 49 Pac. 508, 510; *Meader v. Farmers' Mut. Fire Relief Ass'n,* 137 Ore. 111, 1 P. (2d) 138, 141.)

In *Silver v. United States Trust Co.,* 280 Mass. 295, the plaintiffs repaired part of the damage done by fire to property then owned by one Levinton on which the defendant held a mortgage. The work was done under contract with Levinton which contained an assignment to plaintiffs of Levinton's interest in money then "due or to become due to him from the respective fire insurance companies who are insuring the fire loss on said building." The contract also contained the following: "The said owner does hereby authorize and empower and request the insurance companies covering the loss on said building to make the drafts totaling $1,338 payable to the said contractors directly and the balance of the fire loss to be payable to him." "The trust company held a first mortgage for $6,000

and insurance policies, issued to Levinton as owner, payable to it as first mortgagee and to one Freedman as second mortgagee.'' In its opinion the court said (pp. 298-9):

"In *Palmer Savings Bank v. Insurance Co. of North America,* 166 Mass. 189, Field, C. J., declared the law of this Commonwealth to be, where the loss upon a policy of fire insurance was made payable to a mortgagee as his interest may appear, that, if the mortgage is outstanding at the time of the loss and the mortgage debt exceeds the loss, the mortgagee can recover the whole amount payable for the loss in his own name. The mortgagor is entitled only to any balance remaining after the mortgage is paid. Hence the assignment made here by Levinton to the plaintiffs conveyed to them only the balance which might remain for him after any amounts due upon the first and second mortgages had been paid. There was no such balance. They took nothing by the assignment. . . .

"Had the plaintiffs sought a mechanic's lien for work done under their contract, the prior mortgagees would be preferred to them. G. L. c. 254, sec. 7. They are in the unfortunate position of any workman who has added value to a mortgaged building under contract with the owner and has not been paid before the mortgage is foreclosed. The mortgagee or purchaser at foreclosure is not bound to pay either the contract price or the value added by the work, although what he obtains may be enhanced in value by that work. Neither has any relation of contract or *quasi* contract with the workman. The buyer, speaking generally, has paid in the price bid the value of the work. He is not enriched unjustly. In the case before us, the defendant has, seemingly, both the building enhanced in value by the work for which the insurance money was intended to be applied under the contract, and the insurance money; but, in fact, through the price paid at the foreclosure

the increased value due to the contract work has been made good to the owner, Levinton. The legal situation is the same as if the price had been paid to the owner. The latter has received it in the credit of the price bid upon the mortgage debt."

In *Healey Ice Mach. Co. v. Green,* 181 Fed. 890, the owner of the premises had taken out insurance policies payable to himself or to the mortgagee. The court in refusing to allow a lien claimant to participate in the proceeds of one of the insurance policies to the detriment of the mortgagee, said (p. 896):

"Any suggestion of an intention on the part of Hill and Johnson, who took out the policies, to protect complainant's alleged liens, is negatived by the fact that both they and their grantors denied that any debt was due complainant, or that the property was subject to any lien. Again, the proceeds of the policy are specifically appropriated by its terms. There being no obligation on the part either of Hill and Johnson or Green and wife to insure for the benefit of complainant, it is difficult to perceive how a court of equity could appropriate to it money due upon an express contract by the insurance company to defendants. Equity seeks to effect the intention of parties, and only to prevent fraud renders decrees contrary to the expressed intention."

In support of their position cross defendants cite *Huey v. Ewell,* 22 Tex. Civ. App. 638; *Rosenthal v. Iron Co.,* 197 Wis. 136, and *Connors v. Mango,* 207 Wis. 115. The first case is readily distinguishable upon the facts. We are unable to find the second case. The third case, in our judgment, is in accord with the authorities we have heretofore cited.

Cross defendants' seem to place stress upon the fact that the policy was not made payable to the trustee alone, but to both the mortgagor and trustee, as their respective interests might appear. We have seen from

the cases cited that even if the mortgagor in the instant case had had the policy made out payable to himself alone, an equitable lien upon the fund realized existed in favor of the trustee.

Cross defendants admit that cross complainants alleged in their amended cross-bill a default in the payment of taxes levied against the premises described in the trust deed for the years 1928, 1929 and 1930, and that the master's report and the decree so found, but they argue that the record shows no proof of the default. This argument is without merit and is clearly an afterthought. We may say, however, that cross defendant Koscher, in her answer to the amended cross-bill, failed to deny the allegations in the amended cross-bill as to the default. She also failed to object and except to the finding in the master's report. She is therefore in no position to raise the instant point even if it were material to a decision of the instant case.

At first blush it might seem as though the equities in this case were with the lien claimant, but when the facts and the law bearing upon them are carefully considered it is clear that the equities are with the trustee as to the proceeds of the fire insurance draft.

That part of the decree of the circuit court of Cook county which orders that the entire proceeds of the insurance draft be paid to the lien claimant John G. Lobstein in satisfaction of his lien is reversed, and the cause is remanded with directions to the chancellor to enter an order directing the master in chancery to apply the proceeds of the fire insurance draft in payment of the trust deed indebtedness.

*Decree reversed in part, and remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.