In re Gerald NAMENSON, Bankrupt,
Appellant.

No. 76–1529.

United States Court of Appeals,
First Circuit.

Argued March 9, 1977.

Decided June 7, 1977.

Samuel Newman, Boston, Mass., for appellant.

Daniel Briansky, Boston, Mass., for appellee.

Before COFFIN, Chief Judge, MOORE * and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff brought this action to establish that the bankrupt's debt to him was not dischargeable. The bankruptcy judge found for the plaintiff, awarding him $5,890.96. We affirm.

The plaintiff, Vallencourt, sold property to the bankrupt, who assumed three mortgages and gave Vallencourt a fourth. Later, at a time when the bankrupt was having trouble meeting his mortgage payments, the mortgaged property was partly destroyed by fire. The insurance company sent the bankrupt two checks totaling $6,390.96, payable to the bankrupt and all four mortgagees. The bankrupt forged the signatures of the mortgagees and cashed the checks. He used not more than half of the insurance money to repair the fire damage, and his repairs did not restore, or even affect, the market value of the damaged property. Some time later, the first mortgagee foreclosed. The first and second mortgagees were paid in full, and the third mortgagee received all but $500 of his loan. Vallencourt was paid nothing.

The bankruptcy judge found the bankrupt liable to Vallencourt because his forgery had prevented the mortgagees from applying the insurance payments against the first mortgage. If the mortgage had been reduced in this fashion, the judge found, Vallencourt would have received more money when foreclosure took place. The judge reasoned that all but $500 of the insurance money would have passed through the hands of the first three mortgagees, eventually reaching Vallencourt. The judge awarded Vallencourt this amount; he also declared that section 17(a)(2) of the Bankruptcy Act (now codified at 11 U.S.C. § 35(a)(2)) prevented discharge of this liability in bankruptcy because the bankrupt used false pretenses or representations to obtain the insurance money.[1]

■ The bankrupt argues first that a record of the bankruptcy proceeding is required. The bankruptcy judge used a tape recorder at the hearing, but the tapes were not complete and were never intended to serve as a record. No formal record was made. The rules for bankruptcy hearings require the making of a record "[w]henever practicable". Bankruptcy Rule 511(a). We have no reason to believe that a record would have been impracticable in this case, but it seems that neither the parties nor the bankruptcy judge saw the need for an official tape or transcript of the hearing until the bankrupt raised this point on appeal. It is now too late to remedy the omission. The bankrupt does not suggest that he was harmed in any way by the lack of an official record. He merely points to the rule. In the absence of a claim of prejudice or an objection at a time when the defect was remediable, we do not think that a new hearing is mandated simply because the

---

* Of the Second Circuit, sitting by designation.

1. Section 17(a)(2) reads as follows:
   "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations . . .."

first was not recorded. Moreover, we note the conclusion of the district court, which considered this claim at length. The district court found that a stenographer was not obtained because of a "unilateral mistake by [the bankrupt's] trustee." Vallencourt did provide money for a stenographer, but the trustee never forwarded Vallencourt's check to the bankruptcy court.

 The bankrupt also claims error because Vallencourt did not rely on the bankrupt's forged signature. He believes that a plaintiff must have relied directly on the bankrupt's false representations to have a claim under section 17(a)(2). This is an overly technical view of what the statute requires. The bankrupt obtained money "by false pretenses or false representations". 11 U.S.C. § 35(a)(2). He knew that he was committing a fraud. *Cf. Wright v. Lubinko,* 515 F.2d 260 (9th Cir. 1975). The banks that cashed the checks were the bankrupt's immediate victims, for they relied directly on his false signatures; but they have suffered no loss. Nor has the insurance company that wrote the checks been harmed. The loss has ultimately fallen in large part on Vallencourt because he justifiably relied on his status as an insurance payee to protect him. As a payee, Vallencourt could have insisted that all insurance proceeds be used to pay off the mortgage and not to repair the property. *Silver v. United States Trust Co.,* 280 Mass. 295, 298, 182 N.E. 372 (1932); *Pink v. Smith,* 281 Mich. 107, 274 N.W. 727 (1937); *Savarese v. Ohio Farmers Ins. Co.,* 260 N.Y. 45, 182 N.E. 665 (1932); *Carlin v. Frey,* 157 A.D. 84, 141 N.Y.S. 580 (App.Div.1913). To the extent that foreclosure did not make him whole, Vallencourt has a continuing right to the proceeds. 5 Couch on Insurance 2d §§ 29:75, 29:77 (1960); *Rosenbaum v. Funcannon,* 308 F.2d 680 (9th Cir. 1962). The bankrupt's forgery did not damage the first two mortgagees, who were paid in full without recourse to the insurance proceeds. The third mortgagee had a right to $500 from the proceeds to satisfy his mortgage,[2] and the remainder would have gone to Vallencourt. Vallencourt's reliance on his rights as an insurance payee was betrayed by the bankrupt's deliberate forgery. The lack of a more direct reliance will not defeat his claim nor make it dischargeable.

*Affirmed.*

---

2. The bankrupt also challenges as too speculative the bankruptcy judge's finding that the third mortgagee would have taken only $500 of the insurance proceeds, in view of the judge's observation that this mortgagee had undetermined litigation expenses following foreclosure. But he is not a party to this litigation and the bankrupt may not assert the interest, if any, of a third person. The bankrupt has never presented evidence to support his claim that the third mortgagee might take more than $500; in the light of this silence, the bankruptcy judge's determination of damages was not clearly erroneous.