**In re Stanley Earl CHEEK, Virginia Alice Cheek, Debtors.**

**Stanley Earl CHEEK, Virginia Alice Cheek, Plaintiffs,**

v.

**LOWE'S OF GEORGIA, INC., Defendant.**

**Bankruptcy No. 81–60069–THOM.**
**Adv. No. 81–6062–THOM.**

United States Bankruptcy Court,
M. D. Georgia,
Thomasville Division.

March 2, 1982.

Timothy J. Warfel, Moultrie, Ga., for plaintiffs.

James C. Whelchel, Moultrie, Ga., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALGIE M. MOSELEY, Jr., Bankruptcy Judge.

Stanley Earl Cheek (Cheek) and his wife Virginia Alice Cheek filed a joint voluntary Chapter 7 case on August 28, 1981. Scheduled as a creditor was Lowe's of Georgia, Inc. (Lowe's). They filed a complaint to avoid two judgment liens of Lowe's as impairing exemptions. One judgment lien is identified as Case No. 9956 in the Superior Court of Colquitt County, Georgia which is a judgment against Stanley Earl Cheek. The other judgment lien is identified as Case No. 80–178 in the Superior Court of Colquitt County, Georgia wherein Virginia Alice Cheek is the defendant. Lowe's does not contest the avoidance of the judicial lien as to Mrs. Cheek, and an order will be issued avoiding the fixing of the lien of said judgment in Case No. 80–178. In response to the complaint to avoid the judicial lien in favor of Lowe's against Mr. Cheek in Case No. 9956, Lowe's contends that the debt represented by that lien is nondischargeable by reason of a false affidavit. A suggested Pre-trial Order was submitted by counsel for Cheek and Lowe's in which they stipulated the facts, waived a trial, and consented to the Court deciding the issues on briefs submitted by respective counsel. This adversary proceeding is now ready for decision, and as stated above, we deal only with the issues between Cheek and Lowe's.

### STIPULATED FINDINGS OF FACT

1. Defendant obtained a judgment against Stanley Earl Cheek on April 10, 1980, in the amount of $7,193.53 in Colquitt County Superior Court, Civil Action File No. 9956, on which a fi. fa. was issued and recorded in General Execution Docket Book N, Page 211.

2. [Omitted, as it relates to Case No. 80–178 involving Mrs. Cheek].

3. The consideration for the indebtedness was building supplies and materials purchased on open account by Debtor-Plaintiff. Both judgments arose out of the same indebtedness.

4. Of the total indebtedness $6,572.84 arose out of materials purchased by Debtor-Plaintiff an open account which were used by Debtor-Plaintiff as General Contractor in construction of a residence. There has accrued on the said $6,572.84 the further sum of $1,070.12 as interest.

5. Upon completion of the construction of the said residence Stanley Earl Cheek executed an affidavit stating that all bills for labor and materials used in connection with said construction had been paid in full when in fact he knew that all bills for labor and materials used in connection with said construction had not been paid in full. [The affidavit was executed on May 11, 1979].

6. Under the laws of Georgia, Ga.Code Ann. § 67–2001, ¶ 2, the sworn statement of the Contractor or other person at whose instance the work was done or material was furnished, that the agreed price or reasonable value thereof has been paid, operates to dissolve all liens, including those of materialmen. The affidavit was required by a lender expressly for the purpose of dissolving any liens such as that of Defendant. This purpose in obtaining the affidavit and the effect of the affidavit in dissolving the lien were known to Plaintiff at the time he signed the affidavit.

7. Defendant filed for record its claim of lien on June 20, 1979, in Deed Book 337, Page 376, in the office of the Clerk of Superior Court of Colquitt County within three months after completion of the construction of said residence.

8. The lien of these judgments impairs exemptions claimed by Debtors-

Plaintiffs in a schedule filed with the Debtors' Petition in Case No. 81–60069–THOM.

## STIPULATED ISSUES OF FACT

1. Was the false affidavit a false pretense, a false representation or actual fraud by means of which Debtors-Plaintiffs obtained money, property, services or an extension, renewal or refinance of credit?

This is answered in the affirmative.

2. Did the Debtors-Plaintiffs by means of the false affidavit wilfully and maliciously injure the Defendant or its property due to the fact that the lien was defeated by the affidavit?

This is answered in the affirmative.

## STIPULATED ISSUES OF LAW

1. Is the debt excepted from discharge because it constitutes an obtaining of money, property, services or an extension, renewal or refinance of credit by false pretenses, a false representation, or actual fraud?

This is answered in the affirmative.

2. Is the debt excepted from discharge because it constitutes a debt for wilfull and malicious injury by the Debtors-Plaintiffs to Defendant or to the property of Defendant?

This is answered in the affirmative.

## DISCUSSION

This matter is before the Court on a complaint for avoidance of a judgment lien under 11 U.S.C. § 522(f); and the answer of Lowe's which asserts that the debt is nondischargeable because of Cheek's false affidavit. The parties have stipulated that the dischargeability of Cheek's debt to Lowe's is the dispositive issue. As presented to the Court by the parties, if the debt is not dischargeable, then the judgment lien should not be avoided. Thus, the Court decides the issue herein as presented by the parties.

Lowe's contention is that the debt owed by Cheek should be held nondischargeable on two separate theories. One is that the execution of the false affidavit constituted a false pretense, false representation, or actual fraud by which Cheek obtained money or property so as to make the claim of Lowe's nondischargeable under 11 U.S.C. § 523(a)(2)(A). The other is that the execution of the false affidavit resulted in a wilful and malicious injury to the property of Lowe's created a debt nondischargeable under 11 U.S.C. § 523(a)(6). These are dealt with separately below.

11 U.S.C. § 523(a)(2)(A) provides:

"A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—

(1) . . .;

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, . . . "

Cheek contends that the execution of the false affidavit was not "obtaining money" within the terms of § 523(a)(2)(A). He relies on In re Grubbs, 9 B.R. 499 (M.D. Ga., 1981) reversing in part In re Grubbs, 7 B.R. 557 (Bkrtcy.M.D.Ga., 1980). The facts in Grubbs are greatly different than the facts in the case sub judice, and, accordingly, cannot support the contentions of Cheek. In Grubbs, Grubbs involved the forebearance of the filing of a lien in return for a promise to pay bills for building material supplied to the contractor there from the proceeds of a real estate closing of one of the three houses involved. In Grubbs the lien laws of Georgia were not complied with. In the instant case, they were.

Ga.Code Ann. § 67–2001 provides that materialmen such as Lowe's have a "special lien" on the real estate. Also, this Code section provides that a sworn statement of the contractor shall operate to dissolve all liens given by this section. Ga.Code Ann. § 67–2002 requires the filing of the lien within three months after the material is furnished. Lowe's did all that it was required to do. These Code sections then give a "special lien," provide a method to make

good the lien, but they also provide a method for the contractor (Cheek) to dissolve the lien. By the giving of the sworn statement, Cheek did not dissolve his lien, but according to the Georgia Code sections he dissolved the lien of Lowe's. The dissolution of Lowe's lien by Cheek was tantamount to Cheek obtaining money or property by false representation or actual fraud. Under the criminal code of Georgia, Cheek's conduct was an indictable offense. *See Smith v. State*, 148 Ga.App. 634, 252 S.E.2d 62 (1979) and *Short & Paulk Supply Company v. Dykes*, 120 Ga.App. 639, 171 S.E.2d 782 (1969).

The transaction involved here is not one of the usual type of credit transaction which is completed instantaneously. Here, the transaction extends over a period of several months. When Cheek acquired the material from Lowe's, there was more than the usual open account credit transaction. Upon the acquisition of the materials from Lowe's, Lowe's acquired a "special lien" on the real estate in which the materials were used. The "special lien" continued until three months after the last item of material was furnished provided that Lowe's properly recorded its claim of lien within the three-month period. At the time that Cheek executed the false affidavit, Lowe's had a money or property interest in the real estate represented by its lien. By reason of the false affidavit, Cheek dissolved the "special lien" of Lowe's and received the money or property interest rightly belonging to Lowe's. This is obtaining money or property by reason of false representation or actual fraud.

No cases have been found by or cited to the Court exactly in point. However, the principles in *In re Namenson*, 555 F.2d 1067 (1st Cir. 1977), *cert. den.* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142, would appear appropriate in this case. Cheek knew the effect of his false affidavit would be to dissolve the lien. Lowe's reliance on its rights as the holder of a "special lien" was betrayed by Cheek's false affidavit.

As to Lowe's second theory that the debt is nondischargeable because the false affidavit resulted in a wilful and malicious injury to the property of Lowe's, the facts clearly show that this is a valid ground upon which to find that Lowe's debt is nondischargeable under 11 U.S.C. § 523(a)(6). Under this section the unauthorized act of dissolving the inchoate lien of Lowe's by use of the false affidavit was an "injury by the debtor . . . to the property of another entity" and was "wilful and malicious."

"Injury" is a broad concept in terms of dischargeability. The United States Supreme Court in reviewing a statutory ancestor of 11 U.S.C. § 523(a)(6), containing substantially the same language said:

"To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury thereto within the common acceptation of the words." *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 40, 61 L.Ed. 205 (1916).

To the same end, 3 Collier on Bankruptcy § 523.16 at 523–115 to 116 (15th Ed. 1979) states:

"Injuries within the meaning of the exception are not confined to physical damage or destruction; but an injury to intangible personal property rights is sufficient."

Therefore, courts have held frequently that where a debtor disposes of property subject to a security interest in such a fashion as to take the property out of the reach of the secured creditor, an "injury" has occurred under § 523(a)(6). *See, e.g., In re Obermeyer*, 12 B.R. 26 (Bkrtcy.N.D.Oh., 1981). The same result has been held where the lien having attached to property is a lien which may be avoided under 11 U.S.C. § 522(f). *See In re Auvenshine*, 9 B.R. 772, 7 B.C.D. 511 (Bkrtcy.W.D.Mich., 1981). The same result has been held where the lien was attached but was not perfected. *See In re Morris*, 12 B.R. 509 (Bkrtcy.Nev., 1981). There is no reason, in logic or law, why a different rule should apply where it is the security interest (the inchoate lien) that is taken from the creditor and not merely the collateral to which it attached.

In either case the creditor is substantially impaired in that he loses his collateral. In this case, Lowe's had a lien on homeowner's property to secure payment of Mr. Cheek's debt to Lowe's. Cheek took an action which effectively destroyed that lien. Loss of the lien was an "injury."

"Wilful and malicious" in reference to the state of mind of a wrongdoer in creating a nondischargeable debt are words of art. As stated in *3 Collier on Bankruptcy, supra*:

> "An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill will. The word 'willful' means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury."

Cheek need not have had any personal hatred for Lowe's. It would be sufficient that he intended to deprive Lowe's of a right to secure their debt. It is admitted that Cheek knew his affidavit was false and that he knew the effect would be to take Lowe's lien from it. His action was such that criminal liability could have been imposed on him. *Smith v. State, supra* and *Dykes, supra*. Surely, it is such as to be "deliberate and intentional" and it is therefore, as a matter of law, such as to be "wilful and malicious" within the meaning of § 523(a)(6).

For these reasons, the debt to Lowe's is held to be nondischargeable and the judgment lien securing that debt is not to be avoided.

Cheek contends that *res judicata* bars a finding of nondischargeability because Lowe's should have, but did not, raise the issue of wilful and malicious injury in the suit giving rise to the judgment lien here (# 9956 Colquit Superior Court). *Res judicata* is a broad concept. It forecloses parties and privies to parties to relitigate all issues which were litigated or should have been litigated previously. *See In re Willis*, 2 B.R. 566 (Bkrtcy.M.D.Ga., 1980) and cases cited there.

If the issues of wilfulness and maliciousness should have been litigated, were necessary to have been litigated, but were not, then *res judicata* would preclude reconsideration here. However, the United States Supreme Court, in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 2210–2212, 60 L.Ed.2d 767 (1979), held that in an ordinary collection suit considerations material to bankruptcy dischargeability are not relevant, and are not such as were *necessarily* raisable. In such a case the material issue is existence of the debt, and other issues, such as wilfulness and maliciousness, are irrelevant. *Id.* Therefore, judgments on debts in such cases are not *res judicata* on dischargeability issues. *Id.* The characterization of "ordinary collection suit" exactly fits the case in state court, which was a suit on an open account. It is not *res judicata* to dischargeability.

Therefore, since wilfulness and maliciousness were not issues "actually and necessarily" raisable, then *res judicata* does not bar litigation of those issues in the context of dischargeability in this case.

An Order is entered simultaneously herewith.