**In re Ben B. LANGWORTHY, JR., Debtor.**

**Erwin WEINREICH and Ursula Weinreich, Plaintiffs,**

v.

**Ben B. LANGWORTHY, Jr., Defendant.**

**Bankruptcy No. 89–5172–8P7.
Adv. No. 89–513.**

United States Bankruptcy Court,
M.D. Florida, Tampa Division.

Nov. 28, 1990.

R. John Cole, Sarasota, Fla., for plaintiffs.

Gary I. Gassel, Charles Webb, Sarasota, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter presently under consideration is an adversary proceeding filed by Erwin and Ursula Weinreich (Plaintiffs) against Ben B. Langworthy, Jr. (Debtor). The Plaintiffs seek a determination that an obligation allegedly owing to them by the Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (4) and (6). The Court has considered the record and finds the facts relevant to a resolution of this matter as established at the final evidentiary hearing to be as follows:

On July 25, 1989, the Debtor filed his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. On October 27, 1989, the Plaintiffs filed the Complaint under consideration, alleging in Count I that the Debtor was, in fact, the alter ego of Seaside Resort of Longboat Key, Inc. (Seaside Resort), a corporation which executed a promissory note in favor of the Plaintiffs in connection with its purchase of an eleven-room motel known as the Seaside Resort located on the Gulf of Mexico at 4475 Gulf of Mexico Drive, Longboat Key, Florida 33548, from the Plaintiffs and N.D. Properties, Inc. (N.D. Properties); that the Debtor falsely represented to the Plaintiffs that the bond securing the Note would have at all times a market value equal to the principal amount due under the Note; that the bond would provide for quarterly payments of interest that would exceed the quarterly payments due under the Note; and that the Plaintiffs would be in a position more secure than if the motel was security for the Note. On the basis of these representations, the Plaintiffs contend that they agreed to sell the motel to N.D. Properties. The Plaintiffs further contend that they relied on the representations by the Debtor, and that had they known the true value of the bond, they would not have agreed to sell the motel to N.D. Properties. Thus, the Plaintiffs contend that the balance due on the Note should be declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

In Count II of the Complaint, the Plaintiffs allege that the amounts owing under the Note should be declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(4) on the basis that the Debtor obtained the motel through larceny and/or embezzlement.

The claim set forth in Count III of the Complaint is based on the allegation that the Debtor willfully and maliciously con-

verted the motel from the Plaintiffs and, therefore, the amounts owing under the Note should be declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6). On March 16, 1990, this Court entered an order and dismissed the claim set forth in Count II of the Complaint, the claim based on embezzlement by the Debtor.

In opposition to the allegations set forth in the Complaint by the Plaintiffs, the Debtor contends first that he was only acting as an officer for Seaside Resort, which is the only entity indebted to the Plaintiffs; thus, he is not individually indebted to the Plaintiffs at all. Second, the Debtor contends that the terms of the Note and security agreement executed in conjunction with the Note limit the Plaintiffs' sole remedy in any event to take possession of the bond which the Debtor is ready and willing to surrender; and, as a matter of law, the Plaintiffs are not entitled to fix a personal liability ·on the ·Debtor and, of course, in turn to have the same declared nondischargeable.

The facts on which the Complaint is based as appear from the record are as follows:

On August 23, 1984, the Plaintiffs and N.D. Properties, a corporation in which the Debtor was the president and sole shareholder, entered into a contract for the sale of the motel. (Plaintiffs' Exh. No. 1; Debtor's Exh. No. 1). Pursuant to the terms of the contract, the Plaintiffs agreed to sell the motel to N.D. Properties for a total purchase price of $735,000.00. As part of the consideration, N.D. Properties agreed to assume an already existing mortgage encumbering the property securing a debt in the amount of $146,250.00 and to make a $50,000.00 deposit payment to the Plaintiffs, due at closing. This left a balance of $638,750.00 as to which N.D. Properties agreed to execute a promissory note · in favor of the Plaintiffs. The contract for sale and purchase also provided that N.D. Properties' purchase of the property was contingent upon its obtaining a mortgage commitment in the amount of $638,705.00 and that "all arrangements for closing shall be at Buyer's option and approval." The contract also provided that to secure payment of the promissory note, N.D. Properties agreed to

> execute a security agreement in a form containing terms and conditions acceptable to Buyers where in the Seller is granted a security interest in U.S. Treasury Bonds or Insured Triple "A" Bonds purchased by Buyers in the face amount of $638,750.00.

> Said Bonds shall be held in an escrow account at A.G. Edwards and Son Brokerage House, Sarasota, Florida, or other such place as the parties may agree.

N.D. Properties subsequently assigned its interests in the contract to Seaside Resort. On December 31, 1984, the Plaintiffs and Seaside Resort by its vice-president, the Debtor, met for an "escrow closing" of the sale of the motel. At the escrow closing, the Debtor, on behalf of Seaside Resort executed a nonrecourse promissory note (Plaintiffs' Exh. No. 4) in the original principal amount of $636,007.50 in favor of the Plaintiffs in exchange for the Plaintiffs' execution of a deed of the motel to Seaside Resort. (Plaintiffs' Exh. No. 4). As part of this transaction, Seaside Resort also executed a security agreement granting the Plaintiffs a security interest in "United States Treasury Bonds or Insured Triple A Bonds ... in the face amount of $637,000.00." (Debtor's Exh. No. 2). It is undisputed that as of December 31, 1984, Seaside Resort did not have the bonds which it was required to furnish as security for the Note. This Court is satisfied that the Plaintiffs were aware of this fact.

It is equally without dispute that at the time of the escrow closing, Seaside Resort had yet to obtain the necessary financing to complete the transaction involving the purchase of the motel. For this reason, the documents executed by the parties at the closing were held in escrow by Charles Webb, the Plaintiffs' attorney, pending a final closing to be held after Seaside Resort obtained the necessary financing.

On January 30, 1985, at the request of the Debtor, Sherwin A. Crowne, an investment broker of A.G. Edwards and Sons,

Inc., wrote a letter to the Plaintiffs in care of their attorney, Charles Webb, stating that:

> Please be advised that A.G. Edwards has received the necessary funds from Seaside Resort of Longboat Key, Inc., to assure the purchase of AAA–Insured or GNMA—U.S. Government-backed bonds in the minimum face amount of $637,-000.00. We anticipate physical receipt of the bonds in a period of three to five weeks from the date of purchase.

(Plaintiffs' Exh. No. 7). Mr. Webb, who, as noted earlier, was the Plaintiffs' attorney, reviewed this letter at the final closing held in January of 1985, and informed the Plaintiffs that the letter satisfied the requirements of the security agreement. Mr. Webb released the documents held by him in escrow, the Plaintiffs received the cash deposit, and the deed conveying the motel was released and the sale of the motel was finalized.

It is without dispute that the Debtor in fact purchased an AAA Rated Zero Coupon Bond Registered No. R–3416, dated March 7, 1984, in the face amount of $637,000.00, with a maturity date of March 1, 2017, and paid $25,000.00, the then current price of the bond. (Plaintiffs' Exh. No. 10).

Seaside Resort eventually defaulted under the terms of the Note, and upon the default, the record supports the fact that the Plaintiffs first learned that the bond's face value when delivered did not equal its market value. Apparently, up until this point, the Plaintiffs had understood that the "face value" of a bond equalled its current market value. According to the Plaintiffs, they understood this to be the case because the Debtor had assured them that the bond would be better collateral than a mortgage, as the Gulf-front property could be destroyed by a hurricane or other natural disaster.

There is no question that the Debtor knew that the face value of the bond would not necessarily be the same value as the market value of the bond. Be that as it may, the Debtor never told the Plaintiffs that a bond with a face value of $637,-000.00 could be purchased at a deep discount, nor did the Plaintiffs ever ask the Debtor whether the market value of the bond would equal the face value. There is no question that the Plaintiffs consulted their attorney concerning the value of the security, i.e., bonds in lieu of a mortgage, and their attorney informed them that he did not have expertise in the area of bonds.

It should be noted at the outset that 11 U.S.C. § 523 governs exceptions to discharge and provides in pertinent part as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

■ The exceptions to discharge set forth above must be construed strictly and narrowly against the creditor and liberally in favor of the Debtor in order to further the remedial provisions of the Bankruptcy Code, that is, providing the Debtor with a fresh start. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). To prevail under 11 U.S.C. § 523(a)(2)(A), (4) or (6), a creditor must sustain its burden of proof with clear and convincing evidence, at least in this Circuit. *In re Hunter*, 780 F.2d 1577 (11th Cir.1986).

■ In order to obtain a determination that a debt is nondischargeable pursuant to § 523(a)(2)(A), the Plaintiffs must show that the Debtor obtained money, property, or an extension of credit by false pretenses, a false representation, or actual fraud. In the case of a false representa-

tion, the Plaintiffs must prove that the false representation was made "with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation." *In re Hunter, supra,* 780 F.2d at 1579. Actual fraud may occur when the Debtor has willfully concealed or omitted material facts or when he makes intentional statements of half-truths. *In re Gitelman,* 74 B.R. 492 (Bankr.S.D.Fla.1987). It is not necessary that the property or money obtained be procured for the Debtor himself. *In re Gitelman, supra,* 74 B.R. at 496. Thus, if an officer, director or shareholder of a corporation has obtained money or property for the corporation through fraud, he will not be shielded by the corporate form. *In re Gitelman, supra,* 74 B.R. at 496; *In re Firestone,* 26 B.R. 706 (Bankr.S.D.Fla. 1982).

■ Based on the facts developed in the case at hand, the evidence as to any fraud or false representation on the part of the Debtor is not even in equal balance unless one is willing to accept the proposition that the Debtor had the affirmative duty to explain not only to the Plaintiffs, but also to their attorney who represented them at the closing, that the face value did not mean current market value, but only on maturity. There is no question that the Debtor complied to the letter with the terms of the Note and security agreement describing the type of bond he was to furnish to the Plaintiffs. While it is true that a nondisclosure of material facts may be deemed fraudulent when the other party does not have an equal opportunity to discover the material information, there is no evidence in this record to show that this transaction was anything other than arms-length. Neither is there evidence to prove that the Debtor ever willfully concealed or made half-truths about the present value of the bond. Further, as noted previously, the contract clearly defined the type of bond to be pledged by the Debtor, and the Plaintiffs had ample opportunity to investigate the value of the bond and full opportunity to investigate the relevant facts.

Moreover, the Plaintiffs were represented by counsel during the entire transaction.

Thus, this Court is satisfied that the Debtor's failure to disclose the present value of the bond, as distinguished from the value of the bond on maturity, does not rise to the level of a fraudulent concealment. Neither is there evidence to sustain the Plaintiffs' contention that the Debtor affirmatively represented that the bonds would generate interest sufficient to cover the quarterly interest payments due under the Note. As the Plaintiffs have failed to establish a viable claim under § 523(a)(2)(A), the claim of nondischargeability in Count I cannot be sustained.

The Plaintiffs have likewise failed to sustain their burden of proof to establish their claim based on 11 U.S.C. § 523(a)(4), under which the Plaintiffs must prove by clear and convincing evidence either fraud or defalcation while the Debtor was acting in a fiduciary capacity, embezzlement, or larceny. As noted previously, this Court dismissed the Complaint to the extent it alleged embezzlement on behalf of the Debtor. Since the Plaintiffs did not allege that the Debtor was guilty of defalcation while acting in a fiduciary capacity and there is no proof that the Debtor acted in a fiduciary capacity in the transaction under consideration, the remaining question is whether, based on the purchase and sale of the motel, the Debtor committed larceny.

■ Under § 523(a)(4), larceny is "the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to his use without the consent of the owner." *Collier on Bankruptcy,* Section 523.14(3). Although *Fla.Stat.* § 812.012 defines larceny to include the unlawful taking of "real estate", this Court is satisfied that this Court is not bound by the definition of the term by a state statute but it is entitled to construe, for the purpose of Section 523(a)(4), the term as that term was interpreted under common law. Under common law, the definition of "larceny" must be a felonious taking of another's personal property with intent to convert it or deprive the

**908**

owner of the same. (*Black's Law Dictionary*, 5th Edition). Thus, this Court is satisfied that notwithstanding the Florida Statute, for the purpose of Section 523(a)(4), before the claim based on larceny can be sustained, it must be established that the property involved was personal property and not real property which is the property involved in the instant case. The matter under consideration involved nothing more or less than a bargained for purchase and sale of the motel, clearly with the Plaintiffs' consent. Thus, the Plaintiffs' claim in this regard is also totally without merit.

Finally, the Plaintiffs seek to except the balance remaining due under the Note from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(6), based on the claim that the Debtor caused willful and malicious injury to the Plaintiffs through his alleged conversion of the motel. Conversion has been defined as an unauthorized and wrongful exercise of dominion and control over another's personal property, to exclusion of or inconsistent with the rights of an owner. (*Black's Law Dictionary*, 5th Edition). Thus, even assuming for the sake of discussion that real property is subject to conversion, a proposition quite doubtful to say the least, there is absolutely no evidence in this record to establish that the Debtor willfully and maliciously "converted" the motel. Be as it may, there is hardly any question that a claim founded on a mere technical conversion without conscientious intent to violate the rights of another is dischargeable. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). There is nothing in this record to warrant the conclusion that the Debtor did willfully, conscientiously and maliciously intend to injure the Plaintiffs even if one assumes that the motel could have been subject to conversion under some theory.

Based on the foregoing, this Court is satisfied that a Final Judgment should be entered in favor of the Debtor and against the Plaintiffs determining that any liability of the Debtor under the Note is dischargeable.