**In re Larry B. LENNARD, d/b/a Bo–Le, Inc.; Decatur Construction & Clearing; Jeffords Realty Co., Debtor.**

**Southern Concrete Construction Company, Plaintiff,**

v.

**Larry B. Lennard, d/b/a Bo–Le, Inc.; Decatur Construction & Clearing; Jeffords Realty Co., Defendant.**

**Bankruptcy No. 98–60185–JTL, Adversary No. 98–6005.**

United States Bankruptcy Court, M.D. Georgia, Thomasville Division.

Jan. 19, 1999.

---

**430**

Ben Kirbo, Bainbridge, GA, for Plaintiff.

F. Anthony Blakely, Albany, GA, for Defendant.

## MEMORANDUM OPINION

JOHN T. LANEY, Bankruptcy Judge.

On December 9, 1998, the court held a trial on the complaint of Southern Concrete Construction Company ("Southern Concrete") to determine dischargeability of debt. After presenting the evidence, the parties were given an opportunity to submit written briefs. After considering the evidence, the briefs, and the applicable statutory and case law, for the reasons below, the court will find that the debts to Southern Concrete resulting from the two jobs where false affidavits were executed are nondischargeable.

### Facts

The following facts have been stipulated by the parties. Debtor was a construction contractor working in the Southwest Georgia area. Southern Concrete supplied Debtor with concrete, sand, gravel, and related materials for use in construction. The three jobs involved in this Adversary Proceeding are the Bishop job, the Decatur County job, and the English job.

Between July and September of 1997, Southern Concrete supplied Debtor with materials in the amount of $3,377.15 for work on the Bishop job. Debtor received funds from the Bishops but did not pay Southern Concrete for the materials supplied. In October of 1997, Debtor executed an affidavit that falsely stated that all materialmen and suppliers had been paid in full. In November of 1997, Southern Concrete filed its materialman's lien against the Bishop property.

The second project was a construction project in Decatur County, Georgia. Debtor gave First Port City Bank a deed to secure debt in order to obtain a construction loan for this project in July 1997. Between August and September of 1997, Southern Concrete furnished Debtor with materials for use in construction on this property. First Port City Bank made several advances to Debtor under its construction loan on this property. Debtor did not pay Southern Concrete for the materials supplied. In November 1997, Southern Concrete filed a materialman's lien against the Decatur County property. In December 1997, First Port City Bank foreclosed on the Decatur County property based on its deed to secure debt.

The third job involved in this proceeding is the English job. During August 1997, Southern Concrete delivered materials in the amount of $1,422.52 to Debtor for use in construction on this project. Debtor did not pay Southern Concrete for the materials supplied on the English job. However, in September 1997, Debtor executed an affidavit falsely stating that all materialmen and suppliers had been paid in full.

Although not stipulated, Debtor testified that it was only after he had executed the two false contractor's affidavits that he learned that his main supplier would no longer extend him credit. Debtor also tes-

tified that he had executed false affidavits, such as the ones in the Bishop and English jobs, on many occasions in the past and had subsequently paid Southern Concrete for the materials used in the past. As Debtor's financial situation worsened, he testified that he resorted to kiting checks among various accounts to cover his business expenses, commingling corporate and individual funds.

Southern Concrete's financial manager testified that he was unaware of any affidavits in the Bishop and English jobs. As of the time of trial, Debtor had not paid the indebtedness due to Southern Concrete on any of the three properties involved in this action.

*Discussion*

Southern Concrete asks the court to find that Debtor's debts to it are nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code ("Code").[1] Under § 523(a)(2)(A) of the Code, Southern Concrete alleges that Debtor perpetrated an actual fraud by executing false contractor's affidavits, thereby extinguishing Southern Concrete's lien rights. Under § 523(a)(4) of the Code, Southern Concrete alleges that Debtor committed larceny by executing false affidavits, accepting payments, and failing to deliver any of those payments to Southern Concrete for the materials supplied. Under § 523(a)(6) of the Code, Southern Concrete argues that Debtor caused a willful and malicious injury by converting funds that rightfully belonged to Southern Concrete as payment for materials.

Debtor argues first that he is not individually liable for any actions he took on behalf of his corporation, Decatur Construction & Clearing. In the alternative, Debtor argues that the debts are dischargeable because Debtor had no fraudulent intent and because Southern Concrete did not rely in any way on the false affidavits.

■ As an initial matter, the court finds that Debtor is individually liable for these debts. In discussing § 523(a)(2)(A) of the Code, one court has said, "It is not necessary that the property or money obtained be procured for the Debtor himself. Thus, if an officer, director or shareholder of a corporation has obtained money or property for the corporation through fraud, he will not be shielded by the corporate form." *Weinreich v. Langworthy (In re Langworthy)*, 121 B.R. 903, 907 (Bankr. M.D.Fla.1990) (citations omitted). *See also Bell v. Smith (In re Smith)*, 232 B.R. 461, 33 Bankr.Ct. Dec. 624, 625 (Bankr.D.Idaho 1998) ("It is a general rule that the principals of a corporation will be held responsible under Section 523 for frauds and intentional torts committed individually."). Therefore, if Debtor committed fraud, he would be responsible for that fraud individually despite Decatur Construction & Clearing's corporate status.

■ The burden of proof for actions under § 523(a) of the Code is on the creditor to prove its claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In determining whether Debtor committed fraud under § 523(a)(2)(A) of

---

1. 11 U.S.C. § 523. Exceptions to discharge
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   . . . .
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A) false pretenses, a false representation, or actual fraud, other than a state-

ment respecting the debtor's or an insider's financial condition;
. . . .
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
. . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
11 U.S.C. § 523.

the Code, the court must decide whether Debtor's acts amounted to actual fraud under common law. *Securities and Exchange Comm'n v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir.1998). "A creditor must prove that: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *Id.* The court finds that the execution of the false contractor's affidavits amounted to actual fraud by which Debtor obtained money or property so that the debt to Southern Concrete for those two jobs is nondischargeable.

First, Debtor testified that he knew the affidavits were not true when he executed them, but he executed them anyway because they were necessary to get further payments. Debtor intentionally made a false statement with the intent to terminate Southern Concrete's lien rights.

Second, the court finds that Southern Concrete relied on its lien rights in its dealings with Debtor. As a supplier, Southern Concrete sold to Debtor on an open account in reliance on Debtor's not terminating its lien rights inappropriately. Southern Concrete relied on its lien rights at the time the debts were incurred. *See Cheek v. Lowe's (In re Cheek)*, 17 B.R. 875, 878 (Bankr.M.D.Ga.1982). In describing a similar situation in *Cheek*, this court said,

At the time that [the contractor] executed the false affidavit, [the supplier] had a money or property interest in the real estate represented by its lien. By rea-

son of the false affidavit, [the contractor] dissolved the "special lien" of [the supplier] and received the money or property interest rightly belonging to [the supplier]. This is obtaining money or property by reason of false representation or actual fraud....[The supplier's] reliance on its rights as the holder of a "special lien" was betrayed by [the contractor's] false affidavit.

*Id.* at 878. The same logic applies to the present facts. Southern Concrete was relying on its lien rights in extending credit to Debtor. This reliance was betrayed by Debtor's false affidavits.

Third, the reliance was justifiable despite Southern Concrete sometimes letting the accounts with Debtor go unpaid for close to sixty days. *See Field v. Mans*, 516 U.S. 59, 61, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (articulating the justifiable reliance standard for actions under § 523(a)(2)(A) of the Code). Testimony by Debtor and by Southern Concrete's representative established that Southern Concrete called Debtor a few times when the accounts were close to being sixty days old to tell Debtor how much he needed to pay to avoid going over sixty days. Despite these calls, Southern Concrete expected to be paid when each transaction closed. Debtor's testimony failed to establish a lack of justifiable reliance by Southern Concrete on its lien rights. In fact, Southern Concrete twice filed liens within the three-month period allowed by Georgia law,[2] demonstrating its reliance on its lien rights.

---

2. O.C.G.A. § 44–14–361 provides in part:

(a) The following persons shall each have a special lien on the real estate, factories, railroads, or other property for which they furnish labor, services, or materials:

...

(2)All contractors, all subcontractors and all materialmen furnishing material to subcontractors, and all laborers furnishing labor to subcontractors, materialmen, and persons furnishing material for the improvement of real estate;

...

(b) Each special lien specified in subsection (a) of this Code section may attach to the real estate for which the labor, services, or materials were furnished if they are furnished at instance of the owner, contractor, or some person acting for the owner or contractor.

O.C.G.A. § 44–14–361 (1997 Supp.).

O.C.G.A. § 44–14–361.1 provides in part:

(a) To make good the liens specified in paragraphs (1) through (8) of subsection (a) of Code Section 44–14–361, they must be created and declared in accordance with

Fourth, the court finds that Southern Concrete sustained a loss as a result of Debtor's actual fraud because its lien rights were extinguished by Debtor's false affidavits. Accordingly, for the Bishop and English jobs where Debtor executed false affidavits, the court finds that those debts are tainted with actual fraud and are therefore nondischargeable under § 523(a)(2)(A) of the Code. For the Decatur County job, where no false affidavit was executed, the court does not find that the debt is tainted with actual fraud, and the debt is therefore dischargeable under § 523(a)(2)(A) of the Code.

■ Southern Concrete next argues that Debtor's debts to it are nondischargeable under § 523(a)(4) of the Code as the result of fraud or defalcation while acting in a fiduciary capacity and as larceny. First, the court finds that no trust relationship existed for the purposes of § 523(a)(4) of the Code prior to the execution of the false affidavits. Therefore, Debtor was not a fiduciary for Southern Concrete at the time of his fraudulent actions.

■ Second, the court finds that Debtor did not commit larceny. The court is entitled to construe that term as interpreted in the common law for purposes of § 523(a)(4) of the Code. *See Langworthy,* 121 B.R. at 907. Under the common law, larceny is defined as "a felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *Id.* Debtor testified that at all times, he intended to pay Southern Concrete for the materials. The court finds that Debtor lacked the fraudulent intent necessary for his acts to amount to larceny. *See K–Carpet Co. v. Palumbo (In re Palumbo),* 1994 WL 127599 (Bankr. N.D.Ohio 1994) (general contractor debtor's false contractor's affidavit did not amount to larceny where debtor intended to pay the supplier at all relevant times).

■ Finally, the court finds that Debtor did not convert Southern Concrete's property under § 523(a)(6) of the Code. Not every technical conversion is nondischargeable; it must rise to the level of an intentional injury, akin to an intentional tort, to be excluded from discharge under § 523(a)(6) as a willful and malicious injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) ("[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" (citations omitted)); *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393 (1934). To deny discharge of a debt on this basis, there should be evidence in the record to support a finding that the debtor "willfully, conscientiously and maliciously intend[ed] to injure" the plaintiff. *Langworthy,* 121 B.R. at 908. Because the court finds that Debtor did not intend to injure Southern Concrete, the court finds that the debts

---

the following provisions, and on failure of any of them the lien shall not be effective or enforceable:

> . . .
> (2) The filing for record of his claim of lien within three months after the completion of the work . . .

O.C.G.A. § 44–14–361.1 (1997 Supp.).
O.C.G.A. § 44–14–361.2 provides in part:
(a) The special lien specified in subsection (a) of Code Section 44–14–361 shall be dissolved if the owner, purchaser from owner, or lender providing construction or purchase money or any other loan secured by real estate shows that:

. . .
> (2)(A) They or any of them have obtained the sworn written statement of the contractor or person other than the owner at whose instance the labor, services, or materials were furnished, or the owner when conveying title in a bona fide sale or loan transaction, that the agreed price or reasonable value of the labor, services, or materials have been paid or waived in writing by the lien claimant. . . .

O.C.G.A. § 44–14–361.2 (1997 Supp.)

are not the result of a conversion that would amount to a willful and malicious injury under § 523(a)(6) of the Code.

### Conclusion

The court finds that Debtor's debts to Southern Concrete in the amount of $3,377.15 for the Bishop job and $1,422.52 for the English job are nondischargeable under § 523(a)(2)(A) of the Code, being the result of money or property obtained by actual fraud. However, the court finds that the debt for the Decatur County job is not excepted from discharge under § 523(a)(2)(A) of the Code because Southern Concrete failed to prove actual fraud where no false affidavit was executed. In addition, the court finds that the debts to Southern Concrete are not excepted from discharge under § 523(a)(4) of the Code because there was no trust relationship and because Debtor lacked the fraudulent intent to commit larceny. Finally, the court finds that the debts to Southern Concrete are not excepted from discharge under § 523(a)(6) of the Code because Debtor did not intend to injure Southern Concrete.