In re MICHAEL WILLIAM
MARSH, Debtor.

John R. Griff, Plaintiff,

v.

Michael William Marsh, Defendant.

Bankruptcy No. 10–63937–MHM.
Adversary No. 10–6198.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 21, 2011.

M. Denise Dotson, M. Denise Dotson, LLC, Atlanta, GA, for Debtor.

## ORDER

MARGARET H. MURPHY,
Bankruptcy Judge.

This matter is before the court on Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. For the reasons stated below, Defendants' motion to dismiss is *denied.*

## STATEMENT OF FACTS

Michael William Marsh ("Defendant"), filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code February 10, 2010 ("Petition Date"). On April 21, 2010, John R. Griff ("Plaintiff") filed a *Complaint Objecting to*

*Discharge of Debt* (the "Complaint") (Doc. No. 1) alleging that the debt owed to Plaintiff was nondischargeable under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). On May 21, 2010, Defendant filed this motion to dismiss Counts I, II, and III for failure to state a claim upon which relief can be granted. (Doc. No. 5)

The Complaint alleges that Plaintiff and Marsh Property Investment, LLC ("MPI") entered into a purchase and sale agreement November 15, 2005, whereby MPI agreed to sell the real property located at 2450 Claude Street, Atlanta, GA 30318 (the "Property") to Plaintiff for the purchase price of $295,000.00 (the "Contract"). On November 23, 2005, Plaintiff tendered $200,000.00 of the purchase price to MPI pursuant to the Contract. Plaintiff alleges that at all relevant times Defendant was the sole member, manager and managing member of MPI. Plaintiff further alleges that the parties intended the $200,000.00 payment to Defendant to be a partial payment toward the purchase price of the Property. Defendant spent Plaintiff's $200,000.00 payment, but Defendant has been unable to deliver clear title to the Property. As of November, 2006, and continuing through the present, Plaintiff has been in possession of the Property. Plaintiff paid the 2007 and 2008 property taxes for the Property, has maintained insurance against the Property and has incurred expenses improving the Property.

On January 10, 2007, Plaintiff was scheduled to close on his purchase of the Property and a HUD–1 Settlement Statement was prepared by Persily & Associates, P.C. (the "closing attorney"). The Settlement Statement reflects Plaintiff's prior payment of $200,000.00 toward the purchase price of the Property and reflects that Plaintiff was to tender $102,113.36 for the balance of the purchase price. The Settlement Statement also reflects that

MPI was required to tender $134,143.10, apparently from the funds already tendered by Plaintiff, convey clear title to Plaintiff, and complete closing of sale. The $134,143.10 payment was necessary to pay an outstanding construction loan secured by the Property. Plaintiff stood ready, willing and able to close on his purchase of the Property, but the closing did not occur as a result of a commission dispute between MPI and their agent Bo Bridgeport Brokers. Because of the commission dispute, the closing attorney provided notice that it would not close the sale, and a Realtor's Lien attached to the Property.

From January, 2007 through the summer of 2008, Plaintiff alleges that he had periodic conversations with Defendant concerning when a closing on the Property would be scheduled. Plaintiff further alleges that during these periodic conversations, Defendant represented that he was on the verge of selling other properties and that as soon as he obtained sufficient cash, closing on the Property would occur. Although no closing date was scheduled, Plaintiff continued in possession of the Property.

In the summer of 2008, Defendant notified Plaintiff that he was in bad shape financially and that the $200,000.00 previously tendered by Plaintiff had been spent and that he did not have sufficient funds available to close on Plaintiff's purchase of the Property. Also, during the summer of 2008, Defendant notified Plaintiff that the holder of the security deed against the Property, Integrity Bank, had been taken over by the FDIC. On or about December of 2008, Defendant informed Plaintiff that he had been unsuccessful in negotiating a resolution with the FDIC and that the FDIC was preparing to foreclose against the Property. In December 2008, the FDIC began advertising the Property to conduct a foreclosure sale on the first Tuesday in January, 2009.

On or about December 30, 2008, Plaintiff and Defendant met at a Starbucks to discuss issues with the Property. At this meeting, Defendant told Plaintiff that his father, Wayne C. Marsh, was agreeable to paying off the FDIC to stop foreclosure of the Property, upon certain conditions. First, Wayne C. Marsh required a deed to the Property. Second, Wayne C. Marsh would not put up the money to stop the foreclosure sale unless Plaintiff agreed to sign a lease agreement (the "Agreement") with him.

While talking with Plaintiff, Defendant produced and provided Plaintiff with the Agreement. Defendant informed Plaintiff that if Plaintiff did not sign the Agreement, the Property would be foreclosed upon and his $200,000.00 payment would be lost. Furthermore, Plaintiff alleges that Defendant represented to him that the Agreement was not really a lease. Instead, Defendant represented to Plaintiff that the transaction, including the Agreement, provided a means for Plaintiff to continue in possession of the Property and give Defendant a two and a half year period to try to rebound financially, repay Wayne C. Marsh and convey title to the Property to Plaintiff. In connection with persuading Plaintiff to execute the Agreement, Defendant promised to tender monthly payments to Plaintiff in the amount of $900.00. At the December 30, 2008, meeting, Defendant wrote a year's worth of post-dated checks to Plaintiff, each in the amount of $900.00. Defendant requested that Plaintiff write a year's worth of monthly post-dated checks to Wayne C. Marsh, each in the amount of $1500.00. At the time of the Agreement, when Plaintiff inquired of Defendant why this request was made, Defendant told Plaintiff that Wayne C. Marsh had made

the request and insisted that monthly payments come from Plaintiff. Defendant explained to Plaintiff that Wayne C. Marsh said that he would not accept monthly payments from Defendant. Per the Agreement, Defendant told Plaintiff that the $600.00 net that Plaintiff was paying Wayne C. Marsh on a monthly basis would be considered interest payments on the balance owed on the Property. Plaintiff alleges that based on these agreements, promises and representations made by Defendant, and because of the imminent threat of foreclosure against the Property, Plaintiff signed the Agreement and provided Defendant with a year's worth of monthly post-dated checks in the amount of $1,500.00 and was given a year's worth of post-dated checks from Defendant in the amount of $900.00.

On December 31, 2008, MPI conveyed its interest in the Property to Wayne C. Marsh by a limited warranty deed. Later, on or about April of 2009, the check for Defendant's $900.00 monthly payment to Plaintiff bounced. From this point forward, Plaintiff received no further payments from Defendant. From April, 2009 until October, 2009, Defendant made repeated representations, assurances and promises to Plaintiff that he would make payments to Plaintiff in accordance with the Agreement and make up the missed payments. During this period, Defendant did make two partial payments of $300.00 each, but tendered no further $900.00 payments and paid none of the arrearage owed.

By late October, 2009, it became apparent to Plaintiff that Defendant would not or could not make the required payments in accordance with the Agreement. Plaintiff also began to believe that the Agreement was really a scam designed to defraud Plaintiff out of his right, title and/or interest in and to the Property as well as

his $200,000.00 payment. Finally, as result of Defendant's failure and/or refusal to make the required payments owed to Plaintiff, on or about October 31, 2009, Plaintiff issued a stop payment order for the November, 2009 post-dated check to Wayne C. Marsh. Plaintiff claims that he was induced by Defendant's fraud to enter into the Contract with such a large deposit. Plaintiff's Complaint also alleges Defendant's conduct constituted larceny or embezzlement, or a willful and malicious injury.

Defendant moves to dismiss on the ground that a provision in the Contract relieves Defendant of any obligations or promises that Defendant made to Plaintiff in inducing Plaintiff to enter into the Contract. The relevant provision in the Contract titled "Earnest Money Held by Seller" states as follows:

> ***Earnest Money.*** Buyer has paid to Seller $200,000.00 check, the receipt of which is hereby acknowledged by Seller, as earnest money, which earnest money is to be deposited ... in the general account of Seller and not in a separate escrow/trust account. This earnest money is to be applied as part payment of the purchase price at the time of closing, or otherwise is to be disbursed as provided in this Agreement. Seller shall deposit such earnest money as provided herein promptly after this Agreement has been accepted by all parties. In the event this Agreement provides that said earnest money is to be deposited in Seller's general account, Buyer acknowledges and agrees that Seller shall have the right to use such Funds for whatever purpose Seller sees fit, and such earnest money will not be segregated or set apart in any manner.

## DISCUSSION

When evaluating a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), made applicable to adversary proceedings under Rule 7012 of the Federal Bankruptcy Procedure, all well pled facts are considered true and construed in a light most favorable to Plaintiff. *See Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir.2008). To defeat a motion to dismiss, "... the factual matter in a complaint must state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* As a general rule, prior to *Iqbal*, a liberal approach to fraud pleading in bankruptcy cases is appropriate. *Davidson v. Bank of New England (In re Hollis and Company)*, 86 B.R. 152 (Bankr. E.D.Ark.1988). *See also, Johannessen*, 76 F.3d 347. "All the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### COUNT I

■ A debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) to the extent that money, property, services, or an extension, renewal, or refinancing of credit, was obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition[.]

The burden of proof is upon the creditor to show by a preponderance of the evidence that the debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (U.S.1991). The creditor must show (1) the debtor made false representations with the intent to deceive; (2) the creditor justifiably relied upon the debtor's false representations; and (3) the creditor sustained a loss as a result of the misrepresentation. *Schweig v. Hunter*, 780 F.2d 1577 (11th Cir.1986); *St. Laurent v. Ambrose*, 991 F.2d 672 (11th Cir.1993); *City Bank & Trust Co. v. Vann*, 67 F.3d 277, 1995 WL 582036 (11th Cir.1995).

In this case, Plaintiff's claim under 11 U.S.C. § 523(a)(2)(A) is premised on two events. The first event occurred when the Defendant persuaded Plaintiff to pay $200,000 pursuant to the Contract. The second event is the December 30, 2008 meeting and the Agreement.

■ With regard to the first event and first element of 523(a)(2)(A), Plaintiff alleged that Defendant misrepresented that Plaintiff's $200,000.00 would be used to pay off the existing construction lien on the Property in order to deliver clear title to Plaintiff. The alleged misrepresentations made by Defendant to induce Plaintiff to sign the Contract are independent of the provisions in the Contract. With regard to the second element, Plaintiff alleged that he justifiably relied on Defendant's misrepresentations to his detriment by delivering the $200,000.00 payment to Defendant. With regard to the third element, Plaintiff alleged that he sustained a loss because Defendant is unable to close the sale or return the $200,000.00 to Plaintiff. Accordingly, Plaintiff's allegations are sufficient to state a claim upon which relief can be granted.

■ With regard to the second event, the December 30, 2008 meeting and Agreement, Plaintiff has sufficiently stated a claim upon which relief can be granted. The facts contained within Plaintiff's Complaint allege that Defendant made false representations regarding the Agreement on which Plaintiff justifiably relied when

signing the Agreement and tendering a year's worth of post-dated checks in the amount of $1,500 each. Plaintiff further alleges that he has experienced a loss due to Defendant's misrepresentations because Plaintiff paid $1,500.00 for ten months under his arrangement with Defendant. The use of an invalid document, such as a bad check to obtain money or property, constitutes a false representation. *Fidelity Service Co. v. Grocki,* 147 B.R. 274 (Bankr. S.D.Fla.1992). Accordingly, these allegations are also sufficient to state a claim upon which relief can be granted under 523(a)(2)(A).

## COUNT II

■ Pursuant to 11 U.S.C. § 523(a)(4), a debt based on "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is nondischargeable. The second part of § 523(a)(4) encompasses embezzlement and larceny. The terms embezzlement and larceny are not modified by the requirement of fiduciary capacity. *Mullis v. Walker,* 7 B.R. 563, 564 (Bankr.M.D.Ga. 1980). The definitions of larceny and embezzlement in § 523(a)(4) are determined under federal common law. *Kaye v. Rose,* 934 F.2d 901 (7th Cir.1991); *Klemens v. Wallace,* 840 F.2d 762 (10th Cir.1988); *Weinreich v. Langworthy,* 121 B.R. 903 (Bankr.M.D.Fla.1990); *Allstate Life Insurance Co. v. Guerrerio,* 143 B.R. 605 (Bankr.S.D.N.Y.1992); *Clarendon National Insurance Co. v. Barrett,* 156 B.R. 529 (Bankr.N.D.Tex.1993); *Great American Insurance Co. v. Graziano,* 35 B.R. 589 (Bankr.E.D.N.Y.1983). Embezzlement has been defined as the "fraudulent appropriation of property by a person to whom such property has been lawfully entrusted or into whose hands it has lawfully come." *Moore v. U.S.,* 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895). Larceny under federal common law is "the felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *Langworthy,* 121 B.R. at 907.

■ The facts alleged in this Complaint are insufficient to support a claim of larceny because Defendant lawfully obtained Plaintiff's $200,000.00 payment through the Contract. However, sufficient facts are alleged to support a claim for embezzlement. Plaintiff alleges that Defendant misappropriated his $200,000.00 payment, intended as partial payment of the purchase price of the Property, but no purchase was consummated. Plaintiff supports his contentions by alleging that under the Contract for the Property, Defendant was required to apply Plaintiff's $200,000.000 payment to the purchase price of the Property at closing and convey clear title to Plaintiff. A more prudent purchaser would have paid the $200,000.00 to the closing attorney to be held in escrow until closing. The Settlement Statement prepared in anticipation of the January 10, 2007 closing is evidence of the parties' intention to apply the $200,000.00 payment towards the purchase price of the Property. Instead of applying the funds to the purchase price of Property, Plaintiff alleges that Defendant informed him during the summer of 2008 that because he was in bad shape financially, the $200,000.00 tendered by Plaintiff had been spent by Defendant and Defendant did not otherwise have funds to apply to an existing security deed against the Property. Accordingly, Plaintiff's allegations are sufficient to state a claim upon which relief can be granted under 523(a)(4).

## COUNT III

■ Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondis-

chargeable. To establish a claim for nondischargeability under Section 523(a)(6), a creditor must show: (1) an injury to the creditor; (2) the debtor's actions which brought about the injury; (3) the injury was intentional and malicious; and (4) the injury gave rise to a claim for damages in favor of the creditor. *In re Cullen,* 71 B.R. 274 (Bankr.W.D.Wis.1987). Pursuant to *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90, (1998), debts arising from recklessly or negligently inflicted injuries do not fall within the willful and malicious injury exception to discharge. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 977. *Kawaauhau* overrules previous Eleventh Circuit precedent to the extent that it would support a finding of nondischargeability for acts by a debtor other than acts committed with the intent to cause injury. *Florida Outdoor Equipment, Inc. v. Tomlinson,* 220 B.R. 134 (Bankr.M.D.Fla.1998).

██ Plaintiff's factual allegations show that Defendant received $200,000.00 from Plaintiff and that the $200,000.00 was intended as a partial payment towards the purchase price of the Property. Instead of applying the $200,000.00 to the purchase price of the Property, Defendant converted the funds for some other use. Discovery is necessary in order to determine whether Defendant willfully and maliciously converted Plaintiff's funds. Plaintiff alleges that he has been injured because Defendant has refused to close on the Property, has not returned Plaintiff's $200,000.00 and has failed to convey clear title to Plaintiff. Accordingly, Plaintiff's allegations are sufficient to state a claim upon which relief can be granted under § 523(a)(4).

As Plaintiff has set forth sufficient facts to state a plausible claim upon which relief can be granted, it is hereby

**ORDERED** that Defendant's motion to dismiss Plaintiffs' counts I, II and III is ***denied.***

**The Clerk, U.S. Bankruptcy Court, is directed to serve** a copy of this order upon Plaintiff's attorney, Defendant's attorney, and the Chapter 7 Trustee.

IT IS SO ORDERED.